1        (1) applicable non-bankruptcy law permits sale of such property free and clear of such interests;

2        (2) such entity consents;

3        (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

4        (4) such interest is in bona fide dispute; or

5        (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

§363(f). Section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met. Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988). In this case, the Court should authorize the sale of the condominium units free and clear of the liens of Canpartners and all other lien creditors under section 363(f)(5) because each of such entities can be compelled, under both section 1129(b) and in a hypothetical non-bankruptcy legal or equitable proceeding, to accept a money satisfaction of their interest.

Courts considering this issue have held that section 363(f)(5) permits lien extinguishment for less than the full amount owing where the trustee or debtor in possession can demonstrate that a legal or equitable proceeding exists pursuant to which the creditor's lien could be extinguished for less than payment in full of the debt. Clear Channel Outdoor, Inc. v. Knupfer (In re PW LLC), 391 B.R. 25, 42-45 (B.A.P. 9th Cir. 2008); Scherer v. Fed. Nat'l Mortgage Ass'n (In re Terrace Chalet Apts. Ltd.), 159 B.R. 821 (N.D. Ill. 1993); In re Gulf States Steel, Inc. of Ala., 285 B.R. 497, 508 (Bankr. N. D. Ala. 2002); In re Stroud Wholesale, Inc., 47 B.R. 999, 1002 (E.D.N.C. 1985), aff'd mem., 983 F.2d 1057 (4th Cir. 1986); WBQ P'Ship v. Virginia Dep't of Med. Assistance Servs. (In re WBQ P'Ship), 189 B.R. 97, 107 (Bankr. E.D. Va. 1995).

The majority of courts considering this issue have held that the cram down provisions of section 1129(b) constitute a qualifying "legal or equitable proceeding" for purposes of section 363(f)(5). See, e.g., Gulf States Steel, 285 B.R. at 508 ("Section 363(f)(5) does not require that the sale price for the Property must exceed the value of the interests, but rather, only that the

345296.05 [XP]    25293

mechanism exists to address extinguishing the lien or interest without paying such interest in full . . . . In this case, each of the claims, liens or interests identified in the Sale Motion could be compelled to accept a money satisfaction in a cram down plan of reorganization in a Chapter 11 case"); In re Grand Slam U.S.A., Inc., 178 B.R. 460, 462 (E.D. Mich. 1995) (analogizing section 724(b) to 1129(b) as a qualifying proceeding under section 363(f)(5)); In re Healthco Int'l, Inc., 174 B.R. 174, (Bankr. D. Mass. 1994); Terrace Chalet, 159 B.R. at 829 ("By its express terms, Section 363(f)(5) permits lien extinguishment if the trustee can demonstrate the existence of another legal mechanism by which a lien could be extinguished without full satisfaction of the secured debt. Section 1129(b)(2) is such a provision").

In this case, section 1129(b)(2)(A)(ii) qualifies as a legal proceeding in which the Debtor could confirm a plan which provides for the sale of Canpartners' collateral free and clear of liens without payment in full for Canpartners' claim, subject to Canpartners' lien attaching to the sale proceeds and Canpartners being allowed to credit bid its claim at the hypothetical sale.[7] 11 U.S.C. § 1129(b)(2)(A)(ii); In re Monarch Beach Venture, Ltd., 166 B.R. 428, 433 (C.D. Cal. 1993) ("1129(b)(2)(A)(ii) allows the sale of collateral free and clear of the creditor's lien, and is essentially a means of converting secured property into cash collateral"). Under such a plan, the Debtor could sell condominium units in stages to maximize the value of the Project and would not be required to wait until it had generated net sale proceeds sufficient to satisfy Canpartners' claim in full before being permitted to close the sale of even one condominium unit. The plan to be filed by the Debtor, that will be on file by the time this motion is heard so provides. Because the sale proposed in this Motion could be accomplished under section 1129(b)(2)(A)(ii), the Court should

---

[7]   Section 363(f)(5) only requires the existence of a *hypothetical* legal or equitable proceeding; "[i]t is important to focus on the hypothetical nature of language of § 363(f)(5) . . . There is no requirement that the legal or equitable proceeding compelling the acceptance of less than full value actually occur prior to the § 363(f)(5) sale, or if at all." In re Levitt & Sons, LLC, 384 B.R. 630, 648 (Bankr. S.D. Fla. 2008); Gulf States Steel, 285 B.R. 497, 508 ("The phrase 'could be compelled' only requires 'that the interest in question be subject to final satisfaction on a hypothetical basis, not that there be an actual payment in satisfaction of the interest from the proceeds of the sale in question") (quoting Healthco Int'l, Inc., 174 B.R. at 176).

20

345296.05 [XP]    25293

allow the release of Canpartners' liens on the condominium units to be sold pursuant to section 363(f)(5).

Not surprisingly, Canpartners has already asserted that the 2008 decision of the Bankruptcy Appellate Panel for the Ninth Circuit (the "BAP") in Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC) prevents sales of the condominium units. Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25 (B.A.P. 9th Cir. 2008) [hereinafter Clear Channel]. In Clear Channel, the BAP summarily rejected the clear weight of authority cited above which recognizes section 1129(b) as a qualifying "legal or equitable proceeding" for purposes of section 363(f)(5). 391 B.R. at 46. The BAP addressed the issue in the context of the release of liens under section 363(f)(5) where the senior lien holder attempted to purchase the debtor's real property by credit bid free and clear of the interest of a junior lien holder pursuant to section 363(f), outside of a plan of reorganization. The Bankruptcy Court approved the sale over the objection of the junior lienholder under section 363(f)(5) on the grounds that such creditor's interest could be satisfied with a payment of money. Id. at 42. The BAP reversed, holding that section 363(f)(5) had not been satisfied because the debtor and the senior lien holder could not rely on the cram down mechanism of section 1129(b) as the qualifying legal or equitable proceeding which would permit extinguishment of the junior lien for less than full payment of the junior lien holder's debt. Id. at 46.

Notably, the BAP failed to offer any legal authority in support of its rejection of section 1129(b) as a qualifying proceeding under section 363(f)(5), relying exclusively on one bankruptcy treatise. 391 B.R. at 46. The Debtor disagrees with the holding of Clear Channel and submits that the BAP's rejection of section 1129(b) as a qualifying proceeding under section 363(f)(5) is flawed for a variety of reasons.[8]

---

[8] The Clear Channel decision is not binding on this court as it remains an open issue whether BAP opinions are binding on the bankruptcy courts in this Circuit. Zimmer v. PSB Lending Corp (In re Zimmer), 313 F.3d 1220, 1225 n. 3 (9th Cir. 2002), and accordingly, the Court's own analysis may be and should be independent of any influences of the Clear Channel holding.

21

345296.05 [XP]    25293

1       By rejecting cramdown, the BAP essentially re-writes section 363(f)(5) to require that
2 "such entity could be compelled in a legal or equitable *nonbankruptcy* proceeding, to accept a
3 money satisfaction of such interest." However, if Congress intended to limit section 363(f)(5) only
4 to those situations in which a debtor or trustee identifies a nonbankruptcy "legal or equitable
5 proceeding," it would have expressly drafted section 363(f)(5) to state "nonbankruptcy
6 proceeding." Elsewhere in the Code, when Congress intends to limit "proceedings" to
7 "nonbankruptcy proceedings," it expressly so states. See 11 U.S.C. § 108(a) ("If . . . an order
8 entered in a nonbankruptcy proceeding . . ."), (b) (same) and (c) (same). Within section 363(f),
9 Congress' references to nonbankruptcy law are explicit – "only if applicable nonbankruptcy law
10 permits . . . ." 11 U.S.C. § 363(f)(1). By contrast, section 363(f)(5) contains no language limiting
11 the qualifying legal or equitable proceeding to a "nonbankruptcy proceeding" or a legal or
12 equitable proceeding under "applicable nonbankruptcy law." If Congress intended to limit the
13 qualifying proceedings under subsection 363(f)(5) to nonbankruptcy proceedings, as the BAP
14 essentially has done in Clear Channel, Congress would have made such a requirement explicit.

15       The BAP also rejects cramdown as a qualifying proceeding as it "undercuts the required
16 showing of a separate proceeding." 391 B.R. at 46. However nothing in section 363(f)(5) requires
17 that the qualifying legal or equitable proceeding be a *separate* proceeding. The separateness
18 requirement is imposed only by the BAP, not by the statute.

19       The BAP also rejected 1129(b) as a qualifying proceeding based on its reasoning that if
20 "the proceeding authorizing the satisfaction was found elsewhere in the Bankruptcy Code, then an
21 estate would not need § 363(f)(5) at all; it could simply use the other Code provision." 391 B.R. at
22 46. Recognizing cramdown as a qualifying proceeding does not render section 363(f)(5)
23 superfluous however as Section 363(f)(5) would still be needed for the state law matters. By its
24 express terms, section 1129(b)(2)(A) pertains to secured claims and allows for the sale of property
25 subject to the secured creditors *liens*. Section 363(f)(5) is not limited to sales free and clear of
26 *liens*; instead it is much broader as it governs sales free and clear of *interests* and therefore applies
27 to cases in which a nondebtor holds an interest other than a lien in the property to be sold and in
28 which such nondebtor's interest may not be subject to cramdown under 1129(b)(2). See In re

345296.05 [XP]    25293

1  Trans World Airlines, Inc., 322 F.3d 283, 289-290 (3d Cir. 2003) (airline employee's employment
2  discrimination claims and flight attendants' travel vouchers were "interest in property within the
3  meaning of section 363(f)" for which employees could be compelled to accept money satisfaction
4  under 363(f)(5)); WBQ Partnership, 189 B.R. at 107 (state's right to recapture depreciation
5  overpayments was a property interest subject to money satisfaction under section 363(f)(5)); P.K.R.
6  Convalescent Centers, Inc. v. Va. Dep't of Med. Assistance Servs. (In re P.K.R. Convalescent
7  Centers, Inc.), 189 B.R. 90, 94 (Bankr. E.D. Va. 1995) ("As the plain meaning of the statute
8  demonstrates, § 363 covers more situations than just sales involving liens"); Gouveia v. Tazbir, 37
9  F.3d 295, 299 (7th Cir. 1994) (trustee could not sell real property free and clear of restrictive
10 covenant running with the land because although the covenant was an interest within the meaning
11 of 363(f)(5), the nondebtors "could not be forced to forego equitable relief in favor of a cash
12 award").

13        However, even if the Court is not inclined to use section 1129(b) as a qualifying proceeding
14 under section 363(f)(5) (or otherwise believes it is compelled to follow Clear Channel), there are
15 other qualifying legal and equitable proceedings under California law which require lienholders to
16 accept money satisfaction and permit sales free and clear of their liens and thus would constitute
17 such qualifying proceedings.

18        The California Code of Civil Procedure authorizes receivers to sell real property free and
19 clear of liens and tender the proceeds to the lienholders. Specifically, section 568.5 of the
20 California Code of Civil Procedure provides that receivers may sell real property in the same
21 manner as a levying officer enforcing a judgment. CAL. CIV. PROC. CODE § 568.5 ("[a] receiver
22 may . . . sell real . . property in the receiver's possession upon the notice and in the manner
23 prescribed by Article 6 [commencing with Section 701.510 . . . ]"). Section 701.630 provides that
24 property sold pursuant to an execution sale is sold free and clear of "the lien under which it is sold
25 [and] any liens subordinate thereto . . . ." CAL. CIV. PROC. CODE § 701.630. Section 701.810
26 provides for money satisfaction of the lienholder's interest pursuant to the statutory order of
27 priority. CAL. CIV. PROC. CODE § 701.810. See also, Bories v. Union Building and Loan Assoc.,
28 141 Cal. 79, 82 (1903) (receivers of building and loan association were required to pay proceeds

23

from the sale of the association's property to senior lienholder as the "property attached came into their hands charged with the lien of the attachment, and when sold by them the proceeds are still charged with the lien and must be applied by the receivers in payment of appellant's claim"). Therefore, under California law, receivers are empowered (with court authority) to sell real property and compel lienholders to accept money satisfaction from the proceeds of sale.

Moreover, California statutory receivership law provides explicit authority for partial sales of real property free and clear of liens by receivers. Section 701.570 allows receivers to sell property in parcels if that method is likely to yield the most profit. CAL. CIV. PROC. CODE § 701.570 ("Property shall be sold separately or in such groups or lots as are likely the bring the highest price. The judgment debtor may request . . . that the property be sold in a particular order. . . ."). See also, Summerville v. March, 142 Cal. 554 (1904) (approving sheriff's partial sale of real property because court did not find that sale in parcels resulted in a lower return than a sale in whole would have).

Under California law, condominium units, as defined under the Code of Civil Procedure, are individual and separate parcels of real property. See 9 Harry D. Miller, MILLER & STARR CALIFORNIA REAL ESTATE § 25B:5, 25B:6. A condominium unit or "separate interest" is a separate ownership in a condominium project consisting of a cube of space as defined in the condominium map or plan. CAL. CIV. CODE § 1351(f). Title to each unit may be held in fee simple, a life estate, an estate for years, or in a combination. CAL. CIV. CODE § 783. Each unit is separately assessed. CAL. REV. & TAX CODE § 2188.6. See also, Resolution Trust Corp. v. Bayside Developers, 43 F.3d 1230, 1242-43 (9th Cir. 1995) (under California law, receiver was authorized to sell townhomes over the objection of the developer-owner because the "broader scope of the receiver's authority to conserve, manage and protect as an owner necessarily encompassed the power to sell, to carry out the pending sales agreements and close the pending escrows because the goal of Bayside's condominium project was development and sale of the townhouses"). Thus, condominium units, as separate parcels of real property, may be sold separately by a receiver under California law and the creditor holding a lien on such condominium units may be required to accept a money satisfaction. Therefore, even under the reasoning of Clear Channel, California receivership proceedings qualify

24

1  as a hypothetical "legal or equitable proceeding" in which a creditor could be compelled to accept a
2  money satisfaction of its lien.
3          Nearly identical Washington receivership statutes have been found to satisfy section
4  363(f)(5) and the requirements articulated in Clear Channel. In In re Jolan, 403 B.R. 866 (Bankr.
5  W.D. Wash. 2009), the Bankruptcy Court considered this issue and analyzed the Clear Channel
6  decision in the context of the sale of property free and clear of liens under section 363(f)(5) . The
7  Jolan Court correctly found that in Clear Channel, the trustee had not raised, and the BAP did not
8  address, any legal or equitable proceedings other than a cram down under section 1129 of the
9  Bankruptcy Code. Jolan, 403 B.R. at 869. See Clear Channel, 391 B.R. at 46 (stating that the
10 proponents of the sale had not "directed us to any such proceeding under nonbankruptcy law, and
11 the bankruptcy court made no such findings."). The Jolan court then analyzed Washington law to
12 determine if legal or equitable proceedings existed pursuant to which a creditor's lien could be
13 extinguished without payment in full on the creditors claim. The Jolan court found such
14 proceedings to exist under Washington's receivership and foreclosure laws. The Washington
15 receivership statute cited in Jolan permits the sale of real property free and clear of liens, whether
16 or not all secured claims will be satisfied by the sale. See WASH. REV. CODE § 7.60.260.
17 Accordingly, because the Jolan court found such legal or equitable proceedings to exist, it
18 authorized the sale free and clear of liens pursuant to section 363(f) of the Bankruptcy Code.
19         Just as the Washington receivership statutes in Jolan satisfy section 363(f), California's
20 receivership statutes qualify as a "legal or equitable proceeding in which the nondebtor could be
21 compelled to take less than the value of the claim secured by the interest." As such, even under the
22 reasoning of Clear Channel, the requirements of section 363(f)(5) have been satisfied and the
23 Debtor should be authorized to sell condominium units free and clear of the liens of Canpartners
24 and any other creditors asserting secured claims.
25 **E.    The Sale Enhances the Value of the Collateral and Provides Adequate Protection.**
26         It is important to note that this is not a case where Canpartners is being compelled
27 ultimately to accept less than its debt as is often the case. Here, the Debtor anticipates that
28 Canpartners' debt will be repaid in full pursuant to the Debtor's plan of reorganization which will

25

345296.05 [XP]    25293

be filed prior to the hearing on this motion. The Sale Program is a necessary first step toward reorganization and repayment of that debt and the value of Canpartners debt will be protected and enhanced by this process. A successful Initial Sale Event will establish the market and value of the collateral to be tens of millions of more than the debt. Canpartners will be adequately protected for the release of its Lien in the condominium units that will be sold because the liens will be transferred to the proceeds of the sale. Courts routinely hold that adequate protection in the context of sale free and clear of interests is achieved when the liens to attach to the sale proceeds. In re Johns-Manville Corp., 837 F.2d at 94; In re Terrace Gardens P'ship, 96 B.R. 707, 713 (Bankr. W.D. Tex. 1989) (citations and footnotes omitted); WPRV-TV, 143 B.R. at 321. Further, "[t]he proceeds [of sales] are in turn buffered by the restriction of Section 363(c) on the debtor's use of cash collateral." Terrace Gardens P'ship, 96 B.R. at 713 n.6. Further, as the Ninth Circuit Court of Appeals has held, an equity cushion can also provide adequate protection. In re Mellor, 734 F.2d 1396, 1400 (9th Cir. 1984). Thus, in addition to the adequate protection afforded to Canpartners by the transfer of its Lien to the net proceeds of the sale of the condominium units, Canpartners will also be protected by the value of the balance of the Project which is not sold as part of the Sale Program.

Further, the Mechanics' Lien Creditors are adequately protected by the retention of their Lien on the remaining unsold portion of the Project. Such Liens total approximately $4.2 million. The Debtor expects that these Liens will be satisfied through payment for services from the Debtor's Construction Reserve. Moreover, the Debtor has valued the condominium units as a whole in excess of $131 million. There is more than sufficient value in the Project to protect the interests of Canpartners and the Mechanics' Lien Creditors. As a result, they are adequately protected for the release of their Liens.

**F.    The Debtor Should be Authorized to Use Cash Collateral.**

The Debtors' use of property of the estate, including cash collateral, is governed by Section 363 of the Bankruptcy Code. 11 U.S.C. § 363(c)(1). Section 363(c)(2) provides that the trustee or debtor in possession may use cash collateral under subsection (c)(1) if:

(a)    each entity that has an interest in such cash collateral

26

345296.05 [XP]    25293

1         consents; or
        (b)    the court, after notice and a hearing, authorizes such use,
2         sale or lease in accordance with the provisions of this section.

3 11 U.S.C. §363(c)(2)(A) and (B).

4         Here, the Debtor requires use of cash collateral to pay the Sales Expenses which are

5 essential to effectuate the Sale Program and to operate the Project during the Sale Program. The

6 Debtor requires $1.2 million for these expenses including, (i) $250,000 to pay marketing expenses

7 (ii) $250,000 to furnish models and provide an on-site marketing office; (iii) up to $500,000 for

8 operating expenses for the Project for the period December 2009 through April 2010, the month

9 when the sales from the Initial Sale Event are expected to close; and (iv) partial payment of the fees

10 of Debtor's professionals in the amount of $200,000. As demonstrated in the Declaration of Lynn

11 Beckemeyer, filed concurrently herewith, the Debtor has excess loan proceeds in its Construction

12 Reserve of $1,474,370, which funds are not needed to pay the remaining costs for completion of

13 construction and are available to fund these necessary expenses.

14         In addition, the Debtor requires use of cash collateral from the sale proceeds to fund the

15 Operating Expenses that are essential to the continued success of the Sale Program and the

16 maintenance of the building as a first class condominium building, including the following

17 necessary expenses and reserves: (i) $883,170 to fund a reserve to cover six months of

18 howeowners' association dues (the "HOA Reserve"), which reserve will be held in escrow or as

19 otherwise required by the DRE; (ii) Homeowners Association Dues for unsold units in the amount

20 of $686,394; (iii) a Warranty Reserve of $2,140,000; and (iv) partial payment against the fees of

21 Debtor's professionals in the amount of $200,000. The HOA Reserve will not be used to pay HOA

22 dues until such time as the DRE permits its release, which is generally in connection with the sale

23 of 80 percent of the units. The Homeowners Association Dues of $686,394 are needed to fund the

24 portion of such dues for the unsold units in the building so that the building will have sufficient

25 funds to operate once condominium units sales begin to close. The amount reserved is based on the

26 Homeowners' Association Budget approved by the DRE and is a reasonable estimate of the

27 amounts necessary to cover the cost of operation of the building as a condominium project.

28 Clearly, it is important for the Debtor to maintain the building for the benefit of those who will

345296.05 [XP]    25293

1  have purchased condominium units at that point and for the benefit of maintaining the building for
2  future sales. The Warranty Reserve represents a reasonable reserve of funds ($10,000 per unit) to
3  cover any warranty issues that may arise. This reserve is also essential to maintaining the quality
4  of the Project. Further, the Debtor's professionals have provided substantial and valuable services
5  to the Debtor since the Petition Date and it is necessary to provide funds for the payment of the
6  Debtor's professional fees as well.

7  Section 363(e) of the Bankruptcy Code provides that a creditor with an interest in cash
8  collateral may request adequate protection of such interest as a condition to use of cash collateral.
9  Section 361 sets forth three methods of providing adequate protection where the same is required.
10 These include (1) a cash payment or periodic cash payments to the extent the use, sale, or lease
11 under section 363 of this title, or any grant of a lien under section 364 of this title results in a
12 decrease in the value of such entity's interest in such property; (2) providing to such entity an
13 additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a
14 decrease in the value of such entity's interest in such property; or (3) granting such other relief,
15 other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an
16 administrative expense, as will result in the realization by such entity of the indubitable equivalent
17 of such entity's interest in such property. 11 U.S.C. § 361. The means set forth in section 361 for
18 providing adequate protection are non-exclusive; thus, adequate protection may take many forms.
19 3 L. King, COLLIER ON BANKRUPTCY, ¶ 361.03 at 361-9 (15th Ed. 2008).

20 Indeed, it is now well accepted that an equity cushion may stand as adequate protection of a
21 secured creditor's interest in its collateral. The Ninth Circuit made clear In re Mellor, 734 F.2d
22 1396, 1400 (9th Cir. 1984), that in the case of an oversecured creditor, an equity cushion of 20% is
23 considered clear adequate protection of a secured creditor's interest in cash collateral, at least for
24 some period of time. Mellor, 734 F.2d at 1401; see also In re McGowan, 6 B.R. 241. 243 (Bankr.
25 E.D. Pa. 1980) (holding a 10% cushion is sufficient to be adequate protection); In re Rogers
26 Development Corp., 2 B.R. 679, 685 (Bankr. E.D. Va.1980) (court decided that an equity cushion
27 of approximately 15% to 20% was sufficient adequate protection to the creditor); see also In re
28

28

345296.05 [XP]    25293

1  O'Connor, 808 F.2d 1393, 1398 (10th Cir. 1987); and McCombs Properties VI, Ltd. v. First Tex.
2  Savs. Assoc'n (In re McCombs Properties VI, Ltd.), 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988).
3        In this case, Canpartners is amply protected by an equity cushion for its use of cash
4  collateral. The Debtor has valued the Project at in excess of $131 million. Canpartners' debt is
5  approximately $84 million. The value of the Project far exceeds the amount of the Canpartners'
6  debt. This is true even following the sale of units as provided in the Sale Program as Canpartners
7  Lien on the units sold is transferred to the proceeds of such sales and it will continue to retain its
8  Lien on the remaining unsold portion of the Project.
9        Moreover, it is well settled, that the use of cash collateral for the preservation of the value
10 of a secured creditor's lien is in and of itself sufficient to provide adequate protection to a secured
11 creditor for use of those funds. Fed. Nat'l. Mortgage v. Dacon Bollingsbrook Associates Ltd.
12 P'ship, 153 B.R. 204, 214 (N.D. Ill. 1993); In re Triplett, 87 B.R. 25 (Bankr. W.D.Tex. 1988); In
13 re Stein, 19 B.R. 458 (Bankr. E.D. Pa. 1982); In re Oak Glen R-Vee, 8 B.R. 213, 216 (Bankr. C.D.
14 Cal. 1981). In Stein, the Court found that, as a general rule, a debtor may use cash collateral where
15 such use would enhance or preserve the value of the collateral, and allowed the debtor therein to
16 use cash collateral even though the secured party had no equity cushion for protection. The Stein
17 Court determined that the use of cash collateral was necessary to the continued operations of the
18 debtor, and that the creditor's secured position could only be enhanced by the continued operation
19 of the debtor's business. In McCombs, cited above, the court determined that the debtor's use of
20 cash collateral for needed repairs, renovations, and operating expenses eliminated the risk of
21 diminution in the creditor's interest in the cash collateral and such use would more likely increase
22 cash collateral. The ordinary and customary costs of maintenance, operation and preservation of
23 property are expenses that preserve and enhance the value of the secured creditor's interest in cash
24 collateral. Such expenses are the same expenses a lender or the lender's receiver would have to
25 pay to preserve and protect the property. See, In re Princeton Square Associates, L.P. 201 B.R. 90,
26 96 (Bankr. S.D.N.Y. 1996).
27       In this case, the Debtor proposes use of cash collateral to pay the operating expenses of the
28 Project to maintain the Project as a first-class condominium building. Thus, Canpartners will be

345296.05 [XP]    25293

adequately protected by the expenditure of such sums to maintain the Project. Similarly, the expenditure of funds for marketing expenses and for furnishing models benefits the Project and Canpartners. The expenditure of such funds enhances the value of the Project to ensure success of the Sale Program, which, in turn, will lead to increased sale prices for the benefit of Canpartners and the estate.

The use of cash collateral involves balancing the interests of the debtor and the secured creditor and the equities must thus be balanced in each case. <u>Stein v. U.S. Farmers Home Admin. (In re Stein)</u>, 19 B.R. 458 (Bankr. E.D. Pa. 1982). In order to encourage reorganization, a flexible approach should be used in the application of adequate protection. <u>McCombs</u>, 88 B.R. at 267 (citing <u>In re Martin</u>, 761 F.2d 472 (8th Cir. 1985)). The debtor's use of cash collateral during case administration must be considered in light of the quest of a successful reorganization. <u>O'Connor</u>, 808 F.2d at 1397. Adequate protection is not intended nor need it stand as an absolute guarantee to the secured creditor that it will receive the value of its interest in the collateral; the cash collateral. <u>McCombs</u> 88 B.R. at 267 (citing <u>In re Elliott Lease Cars, Inc.</u>, 20 B.R. 893 (Bankr. D.R.I. 1982)). Here, the Debtor has established that the proposed Sale Program is an essential first step toward a successful reorganization of the Debtor under a plan that contemplates repayment of Canpartners' debt in full. In light of the proposed adequate protection for Canpartners, balancing the equities in this case mandates that the Court authorize use of cash collateral as provided herein.

G. **<u>Authorization for 845 S. Flower to Obtain the HOA Bond and the Granting of the Priming Lien on the Real Property of Chinatown is Necessary and Appropriate and Adequate Protection is Provided for the Same</u>**

Section 364(c) of the Bankruptcy Code provides that if a trustee, and therefore a debtor in possession pursuant to section 1107, is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien. 11 U.S.C. § 364(c).

30

1   Section 364(d)(1) allows a debtor in possession to obtain credit or incur debt by granting a
2   priming lien on property of the debtor's estate which is already subject to a lien in favor of another
3   creditor. 11 U.S.C. § 364(d)(1). Section 364(d) empowers bankruptcy courts to grant a
4   postpetition lien with priority over all existing liens (even tax liens). In re Carlisle Court, Inc., 36
5   B.R. 209, 219 (Bankr. D.D.C. 1983). To grant a priming lien to a postpetition lender, a debtor in
6   possession is required to show that financing on other terms is unavailable and that the existing
7   lienholder is adequately protected. 11 U.S.C. § 364(d)(1). The "statute imposes no duty to seek
8   credit from every possible lender before concluding that such credit is unavailable. This is
9   particularly true when . . . time is of the essence in an effort to preserve a vulnerable seasonal
10  enterprise." Bray v. Shenandoah Savings and Loan Association (In re Snowshoe Co., Inc.), 789
11  F.2d 1085, 1088 (4th Cir. 1986) (affirming district court's conclusion that trustee had demonstrated
12  by a good faith effort that credit to obtain financing to permit debtor ski resort to continue
13  operations during the ski season was not available without granting a senior lien).

14  Courts have adopted a number of non-exclusive factors when asked to approve a debtor-in-
15  possession's borrowing under section 364(c) and (d). These factors are:

16  (1) whether the proposed financing is an exercise of sound and reasonable business
17  judgment;

18  (2) whether alternative financing is available on any other basis;

19  (3) whether the financing is in the best interests of the estate and its creditors; and

20  (4) as a corollary to the first three points, that no better offers, bids, or timely proposals
21  are before the Court.

22  In re Western Pacific Airlines, Inc., 223 B.R. 567, 572 (Bankr. D. Colo. 1997).

23  To issue the White Report without condition, the DRE requires that the Debtor post the
24  HOA Bond. 845 S. Flower seeks authorization to obtain the HOA Bond to satisfy this requirement.
25  Chinatown requests authorization to provide a first priority lien on its real property as security for
26  the HOA Bond, which lien will be senior in priority to the existing lien of Canpartners and all other
27  Liens on the Chinatown Property. The HOA Bond must be posted so that the sales under the sales
28  program can close and the Debtor can bring value to the estate and its creditors, including

345296.05 [XP]    25293

1  Canpartners who will benefit from the condominium unit sales through payment of its debt under a
2  plan of reorganization. Thus, obtaining the HOA Bond is in the sound exercise of 845 S. Flower's
3  business judgment. Such HOA Bond cannot be obtained without providing security for the HOA
4  Bond. Upon closing the sales necessary to fund the HOA Reserve as a cash reserve to be held in
5  escrow or as otherwise required by the DRE, the Debtor may seek a release of the HOA Bond and
6  the priming lien on Chinatown.
7  Providing a first priority lien to the Issuer will not harm Canpartners as it is adequately
8  protected by the value of the Project ($131 million), the value of the Chinatown Property ($16
9  million), and a Lien on the Debtor's interest in the notes, deeds of trust and other documents
10 executed in connection with any seller financing.

11 **H.    Purchasers of Condominium Units are Entitled to Good Faith Purchaser Status**
12        **Pursuant to Section 363(m) of the Bankruptcy Code**

13 The good faith requirement under Bankruptcy Code Section 363(m) focuses primarily on
14 the disclosure of material sale terms and the absence of fraud or collusion between the purchaser
15 and other bidders or the trustee/debtor in possession. See In re Abbotts Dairies of Pennsylvania.
16 Inc., 788 F. 2d 143, 147 (3d Cir. 1986) (citing In re Rock Indus. Mach. Corp., 572 F. 2d 1195, 1198
17 (7th Cir. 1978); Taylor v. Lake (In re Cada Invs.), 664 F. 2d 1158, 1162 (9th Cir. 1981)). The third
18 party purchasers here should have assurance that their purchases will not be subject to future attack
19 by objecting creditors, if any. Lack of good faith for purposes of Bankruptcy Code section 363(m)
20 is generally determined by the existence of fraudulent conduct during the sale process. See, e.g., In
21 re Exennium. Inc., 715 F. 2d 1401 (9th Cir. 1983). In this case, the sales will be conducted by a
22 broker to be retained pursuant to an order of this court. The Initial Sale Event will be a public
23 auction and the sales will be entered into pursuant to the auction process in arms-length
24 transactions. Similarly, the subsequent conventional sales segment of the Sale Program will be
25 conducted by KW and sales resulting from those efforts will also be transactions negotiated at
26 arms-length. As a result, there should be no concern regarding fraud or collusion in the sale
27 process. Accordingly, the purchasers should be entitled to the protections of section 363(m).
28

32

345296.05 [XP]    25293

## III.

## CONCLUSION

Based on the foregoing, the Debtors requests that the Court grant the Motion as requested herein.

Dated: November 18, 2009

Respectfully submitted,

DANNING, GILL, DIAMOND & KOLLITZ, LLP

By: _/s/ Julia W. Brand_
Julia W. Brand
Attorneys for Debtor and Debtor-in-Possession, Meruelo Maddux - 845 S. Flower Street, LLC and Meruelo Chinatown, LLC

33

345296.05 [XP]    25293

# REQUEST FOR JUDICIAL NOTICE

In support of its *Notice of Motion and Motion for Order Authorizing: (1) Sale of Condominium Units Free and Clear of Liens; (2) Retention of Kennedy Wilson Auction Group, Inc. as Broker for the Sale of the Condominium Units and Approval of the Terms Thereof Including Commissions to Brokers; (3) Use of Cash Collateral for Payments of Certain Expenses with Respect to Sale of Condominium Units; (4) Use of Sale Proceeds and Cash Collateral for Payment of Operating and Other Expenses; (5) Provision of Seller Financing to Condominium Purchasers; and (6) Obtaining Letter of Credit and Granting of Priming Lien on Meruelo Chinatown LLC Property to Act as Security for HOA Bond* (the "Motion"), Meruelo Maddux – 845 S. Flower Street, LLC ("845 S. Flower") hereby requests that the Court take judicial notice of the following:

1. Declarations of Richard Meruelo, John Maddux, and Lynn Beckemeyer in Support of First Day Motions Filed by Debtor Meruelo Maddux - 845 S. Flower Street, LLC, filed on September 15, 2009, in case no. 1:09-bk-21621-KT, docket no. 22.

Dated: November 18, 2009

DANNING, GILL, DIAMOND & KOLLITZ, LLP

By: *Julia W Brand*
Julia W. Brand
Attorneys for Debtor and Debtor-in-Possession, Meruelo Maddux - 845 S. Flower Street, LLC and Meruelo Chinatown, LLC

34

345296.05 [XP]    25293

| In re: MERUELO MADDUX - 845 S. FLOWER STREET, LLC | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 1:09-21621-KT |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Danning, Gill, Diamond & Kollitz, LLP, 2029 Century Park East, Third Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described **NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING: (1) SALE OF CONDOMINIUM UNITS FREE AND CLEAR OF LIENS; (2) RETENTION OF KENNEDY WILSON AUCTION GROUP, INC. AS BROKER FOR THE SALE OF CONDOMINIUM UNITS AND APPROVAL OF THE TERMS THEREOF INCLUDING COMMISSIONS TO BROKERS; (3) USE OF CASH COLLATERAL FOR PAYMENT OF CERTAIN EXPENSES WITH RESPECT TO SALE OF CONDOMINIUM UNITS; (4) USE OF SALE PROCEEDS AND CASH COLLATERAL FOR PAYMENT OF OPERATING AND OTHER EXPENSES; (5) PROVISION OF SELLER FINANCING TO CONDOMINIUM PURCHASERS; AND (6) OBTAINING LETTER OF CREDIT AND GRANTING OF PRIMING LIEN ON MERUELO CHINATOWN LLC PROPERTY TO ACT AS SECURITY FOR HOA BOND; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On November 18, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):**
On November 18, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 18 2009 | Gloria E. Ramos | |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

| In re: MERUELO MADDUX - 845 S. FLOWER STREET, LLC Debtor(s). | CHAPTER: 11 CASE NUMBER: 1:09-21621-KT |
|---|---|

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>November 18, 2009</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Kathryn T Anderson    kanderson@rutan.com
John J Bingham    jbingham@dgdk.com
Julia W Brand    jwb@dgdk.com
Jennifer L Braun    jennifer.l.braun@usdoj.gov
Michael D Breslauer    mbreslauer@swsslaw.com, wyones@swsslaw.com
J Cathrine M Castaldi    ccastaldi@rusmiliband.com
Aaron De Leest    aed@dgdk.com
Barry S Glaser    bglaser@swjlaw.com
John A Graham    jag@jmbm.com
David W Hercher    dave.hercher@millernash.com
William W Huckins    whuckins@allenmatkins.com, clynch@allenmatkins.com
Lance N Jurich    ljurich@loeb.com, kpresson@loeb.com
Tamar Kouyoumjian    tkouyoumjian@sulmeyerlaw.com
Elmer D Martin    elmermartin@msn.com
Daniel J McCarthy    dmccarthy@hillfarrer.com
Dean G Rallis Jr    drallis@sulmeyerlaw.com
Kirsten A Roe    kroe@wthf.com, dfunsch@wthf.com
Victor A Sahn    vsahn@sulmeyerlaw.com
John N Tedford    jtedford@dgdk.com
James A Timko    jtimko@allenmatkins.com
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):**
On <u>November 18, 2009</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Served via U.S. Mail
Debtor: Meruelo Maddux Properties, Inc., 761 Terminal Street, Building 1, Second Floor, Los Angeles, CA 90021
Hon. Kathleen Thompson, U.S. Bankruptcy Court, 21041 Burbank Blvd., Woodland Hills, CA 91367
Jennifer L. Braun, Esq. U.S. Trustee's Offices, 21051 Warner Center Lane, Suite 115, Woodland Hills, CA 91367

Served via U.S. Mail

| **20 Largest Creditors:** | DK Mechanical Contractors |
|---|---|
| SCS Flooring Systems<br>Attn: John Diesenbruch and Geoff Gordon<br>6330 San Vicente Blvd, #110<br>Los Angeles, CA 90048 | Attn: Gary Brubaker<br>3870 E Eagle Dr<br>Anaheim, CA 92807 |
| Martin Brothers Marcowall<br>Attn: Robert Klugh<br>17104 S Figueroa St<br>Gardena, CA 90247 | ACCO Engineered Systems<br>Attn: Ron Falasca<br>6265 San Fernando Road<br>Glendale, CA 92102 |

345898.01 [XP]    25293

| | |
|---|---|
| Architectural Glass & Alum.<br>Attn: Joanna Lefler<br>1151 Marina Village Pkwy, Ste 101<br>Alameda, CA 94501 | Certified Swimming Pools<br>Attn: Kari P Shaw<br>1130 N Hollywood Way<br>Burbank, CA 91505 |
| Architectural Glass & Alum.<br>Attn: David F. Myers, Esq.<br>555 Montgomery Street, Suite 1100<br>San Francisco, CA 94111 | Mr Crane, Inc<br>Attn: Julie Woods<br>647 N Hariton St<br>Orange, CA 92868 |
| Architectural Glass & alum.<br>Attn: Dennis Jean<br>1911 Union Street<br>Oakland, CA 94607 | Sapa Profiles, Inc<br>Attn: Steven Watkins<br>7320 NE 55th St<br>Portland, OR 97218 |
| Helix Electric, Inc.<br>Attn: Casey Long and Ron Harvell<br>P.O. Box 85298<br>San Diego, CA 92186 | Mirrors, Showers & Wardrobes<br>Attn: Kathleen R Peffer<br>26121 Avenue Hall<br>Valencia, CA 92355 |
| KCS West, Inc<br>c/o William W. Huckins, Esq.<br>Allen Matkins<br>Three Embarcadero Center, 12th Floor<br>San Francisco, CA 94111 | Angelus Waterproofing & Restoration<br>Attn: Cindy Martlaro<br>13217 Barton Circle<br>Whittier, CA 90605 |
| Mitsubishi Electric & Electronics, USA, Inc<br>Attn: Michael Corbo<br>5665 Plaza Drive<br>Cypress, CA 90630 | Pacific Pride<br>Attn: Christine Chow<br>2738 Poterro Ave<br>El Monte, CA 91731 |
| XL Fire Protection<br>Attn. Linda Evans and Tom Dickson<br>3022 N. Hesperian Way<br>Santa Ana, CA 92706 | Funes Architecture<br>Attn: Manuel Funes, AIA<br>761 Terminal Street<br>Los Angeles, CA 90021 |
| Complete Door Systems<br>Attn: Toby Svarc<br>14221 Fern Ave<br>Chino, CA 91710 | **Mechanics Lien Creditors:**<br>Gonsalves & Santucci, Inc. dba Conco<br>Attn: Rick Parker<br>5142 Commercial Circle<br>Concord, CA 94520 |
| Harris and Ruth Painting<br>Attn: Mark Heydorff<br>2107 w San Bernardino Road<br>West Covina, CA 91790 | James Maddox, Esq.<br>American Herritage Landscape L.P.<br>Canoga Park, CA 91303 |
| Seeley Brothers<br>Attn: Michele M Walthers and Phil Norys<br>1400 Moonstone<br>Brea, CA 92821 | Pacific Stair<br>Attn: Tracy Goettsh, Project Manager<br>8690 Stairway N.E.<br>Salem, OR 97305 |
| McKendry Door Sales<br>Attn: Steve McKendry<br>16026 Carmentia Road<br>Cerritos, CA 90703 | Warner Constructors, Inc.<br>c/o Daniel J. McCarthy, Esq.<br>Hill, Farrer & Burrill, LLP<br>300 S. Grand, 37th Floor<br>Los Angeles, CA 90071 |

345898.01 [XP]    25293

| | |
|---|---|
| Bapko Metal, Inc.<br>Attn: Fred Bagatturian<br>838 N. Cypress St.<br>Orange, CA 92867 | American Heritage Landscape, LP<br>Attn: Angelica Yuson<br>7945 Deering Avenue<br>Canoga Park, CA 91304 |
| Calex Engineering Co.<br>Attn: Brock Nievwkoop<br>23651 Pine Street<br>Newhall, CA 91321 | |

345898.01 [XP]    25293