Buyer at the Closing, without recourse to Seller, the rights of Seller to, and Buyer shall be entitled to receive and retain, all awards for the taking of the Property or such portion thereof.

9.2    <u>Destruction or Damage</u>.  If, prior to Closing, all or any portion of the Property is damaged or destroyed, and the estimated cost to repair such damage or destruction (**"Repair Cost"**) exceeds $2,000,000 and is not covered by insurance held by Seller, then Buyer may elect to terminate this Agreement by written notice to Seller received no later than ten (10) days after Seller notifies Buyer in writing of the Repair Cost.  If Buyer timely terminates this Agreement as provided above, then this Agreement shall terminate and Escrow Holder shall return to Buyer the Deposit, and any interest thereon, and Seller and Buyer shall be released from any further obligation and liability to the other under this Agreement (except for Buyer's obligations and liabilities that may have arisen under <u>Paragraph 2.4</u>).  If the Repair Cost is $2,000,000 or less or is otherwise covered by insurance held by Seller, then there shall be no abatement in Purchase Price and Seller and Buyer shall proceed to Closing in accordance with this Agreement, provided Seller shall assign to Buyer at Closing, without recourse to Seller, the rights of Seller to any insurance proceeds.

## ARTICLE 10 - DEFAULTS AND REMEDIES

10.1    <u>Seller's Default</u>.  If the Closing fails to occur on or before the Closing Date as a result of Seller's default or breach, then Buyer may elect, as its sole and exclusive remedy, either to (i) terminate this Agreement, in which case Buyer shall be entitled to a refund of the Deposit and all interest thereon, and Seller shall reimburse Buyer, and Buyer may recover from Seller, an amount equal to the out-of-pocket costs incurred by Buyer in connection with the transaction contemplated by this Agreement, as evidenced by paid invoices or other reasonably satisfactory backup documentation, but not to exceed $50,000, or (ii) maintain an action for specific performance.  Buyer hereby waives and relinquishes any right to maintain an action for or to recover against Seller any damages as a result of Seller's default or breach.

10.2    <u>Buyer's Default; LIQUIDATED DAMAGES</u>.  THE PARTIES AGREE THAT IT WOULD BE IMPRACTICAL OR EXTREMELY DIFFICULT TO DETERMINE, PRIOR TO SIGNING THIS AGREEMENT, THE ACTUAL DAMAGES THAT SELLER WOULD SUFFER IF CLOSING DOES NOT OCCUR BY THE CLOSING DATE AS A RESULT OF BUYER'S BREACH OR DEFAULT HEREUNDER. THEREFORE, IF CLOSING DOES NOT OCCUR BY THE CLOSING DATE AS A RESULT OF A BUYER DEFAULT OR BREACH, SELLER MAY TERMINATE THIS AGREEMENT AND SHALL BE ENTITLED TO LIQUIDATED DAMAGES IN THE AMOUNT OF THE DEPOSIT.  UPON SUCH TERMINATION, ESCROW HOLDER SHALL RELEASE AND PAY OVER THE DEPOSIT, AND ALL INTEREST THEREON, TO SELLER.  UPON RELEASE AND PAYMENT OF THE DEPOSIT AND INTEREST TO SELLER, BUYER SHALL BE RELEASED FROM ANY FURTHER OBLIGATIONS UNDER THIS AGREEMENT, EXCEPT FOR OBLIGATIONS UNDER PARAGRAPHS 2.4 AND 11.10.  THIS PARAGRAPH SHALL SURVIVE ANY TERMINATION OF THE AGREEMENT.

_____          _____
Seller's Initials                        Buyer's Initials

## ARTICLE 11- MISCELLANEOUS

11.1    <u>Entire Agreement; Waivers and Amendments</u>.  This Agreement is the entire Agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings, whether oral or written, between the parties with respect to the matters contained in this Agreement.  Any modification of this Agreement must be set forth in writing and duly executed by both parties.  No waiver by any party of any breach hereunder shall be deemed a waiver of any other or subsequent breach.

11.2    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which when taken together shall constitute one and the same instrument.  The signature page of any counterpart may be detached therefrom without impairing the legal effect of the signature(s) thereon provided such signature page is attached to any other counterpart identical thereto except having additional signature pages executed by other parties to this Agreement attached thereto.

11.3    <u>Time of Essence</u>.  Time is of the essence in the performance of and compliance with each of the provisions and conditions of this Agreement.

11.4    <u>Survival/Merger</u>.  Except for the provisions of this Agreement which are explicitly stated to survive the Closing, none of the terms of this Agreement shall survive the Closing and the delivery of the Deed and any other documents and instruments by Seller and the acceptance thereof by Buyer shall effect a merger, and be deemed the full performance and discharge of every obligation on the part of Buyer and Seller to be performed hereunder.

11.5    <u>Notices</u>.  Any communication, notice or demand of any kind whatsoever which either party may be required or may desire to give to or serve upon the other shall be in writing and delivered by personal service, by an overnight courier (such as Federal Express) that provides receipted delivery service, by electronic communication, whether by email or facsimile, or by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

Buyer:                          Watermarke Properties, Inc.
                                410 North Main Street
                                Corona, CA 92880
                                Attention: Jeff Troesh, President
                                Email:  Jeff.Troesh@wpipm.com
                                Facsimile:  (951) 808-1212


with copy to                    Watermarke Properties, Inc.
                                410 North Main Street
                                Corona, CA 92880
                                Attention: Paul Carbone, Acquisitions
                                Email:  Paul.Carbone@wpipm.com
                                Facsimile:  (951) 808-1212

Seller:                          Meruelo Maddux – 845 S. Flower Street, LLC
                                 761 Terminal Street
                                 Building 1, Second Floor
                                 Los Angeles, California 90021
                                 Attention: John Maddux, President
                                 Email: jmaddux@meruelomaddux.com
                                 Facsimile: (213) 627-5979


with copy to:                    Meruelo Maddux – 845 S. Flower Street, LLC
                                 761 Terminal Street
                                 Building 1, Second Floor
                                 Los Angeles, California 90021
                                 Attention: Todd W. Nielsen, General Counsel
                                 Email: tnielsen@meruelomaddux.com
                                 Facsimile: (213) 291-2830


Escrow Holder:                   Chicago Title Company
                                 4041 MacArthur Boulevard, Suite 490
                                 Newport Beach, CA 92660
                                 Attention: Lorri Beasley
                                 Email: BeasleyL@ctt.com
                                 Facsimile: (949) 724-3186

Any party may change its address for notice by written notice given to the other in the manner provided in this Paragraph 11.5. Any such communication, notice or demand shall be deemed to have been duly given or served (i) on the date personally served, if by personal service, or (ii) on the date of confirmed delivery, if by express delivery or courier service, electronic communication or registered or certified mail; provided, however, that any communication, notice or demand received by courier delivery or electronic communication that is received after 5:00 p.m. (local time for the addressee) shall be deemed to have been received on the next business day.

        11.6    Further Assurances. The parties agree to execute such instructions to the Escrow Holder and the Title Company and such other instruments and to do such further acts as may be reasonably necessary to carry out the provisions of this Agreement.

        11.7    Severability. Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be valid under applicable law but, if any provision of this Agreement shall be invalid or prohibited thereunder, such invalidity or prohibition shall be construed as if such invalid or prohibited provision had not been inserted herein and shall not affect the remainder of such provision or the remaining provisions of this Agreement.

        11.8    Interpretation. The language in all parts of this Agreement shall be in all cases construed simply according to its fair meaning and not strictly for or against any of the parties hereto. Paragraph and Article headings of this Agreement are solely for convenience of reference and shall not govern the interpretation of any of the provisions of this Agreement.

{E0158 / P0180 / 00008474.DOC V3}              14

References to "Articles" are to articles and to "Paragraphs" are to paragraphs of this Agreement, unless otherwise specifically provided. Unless expressly indicated to the contrary, the terms "include", "includes", "including" and similar terms shall be construed as if followed by the phrase "without limitation". The terms "person", "party" and "entity" include natural persons, firms, partnerships, limited liability companies, corporations and any other public or private legal entity or trust. The singular of any word includes the plural, and vice-versa. The use of any gender includes all genders.

11.9    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of California without giving effect to the conflicts of law principles of said State. The Bankruptcy Court shall retain exclusive jurisdiction to resolve any and all disputes pertaining to this Agreement, including without limitation the enforcement and interpretation of any of its terms, and Seller and Buyer agree to submit to the jurisdiction of the Bankruptcy Court for the purpose of resolving such disputes.

11.10    <u>Attorneys' Fees</u>. For purposes of this Agreement, the term **"attorneys' fees"** or **"attorneys' fees and costs"** shall mean the fees and expenses of counsel to the parties hereto, which may include printing, photostatting, duplicating and other expenses, air freight charges, and fees billed for law clerks, paralegals and other persons not admitted to the bar but performing services under the supervision of an attorney. If any action or proceeding be commenced or claim asserted (including an appeal thereof) to enforce any of the provisions of this Agreement or to enforce a judgment, whether or not such action is prosecuted to judgment (**"Action"**), (i) the unsuccessful party therein shall pay all costs incurred by the prevailing party therein, including reasonable attorneys' fees and costs, court costs and reimbursements for any other expenses incurred in connection therewith, and (ii) as a separate right, severable from any other rights set forth in this Agreement, the prevailing party therein shall be entitled to recover its reasonable attorneys' fees and costs incurred in enforcing any judgment against the unsuccessful party therein, which right to recover post-judgment attorneys' fees and costs shall be included in any such judgment. The right to recover post-judgment attorneys' fees and costs shall (a) not be deemed waived if not included in any judgment, (b) survive the final judgment in any Action, and (c) not be deemed merged into such judgment. The rights and obligations of the parties under this <u>Paragraph 11.10</u> shall survive the termination of this Agreement.

11.11    Successors and Assigns.    Except as hereinafter provided, Buyer shall not assign or transfer this Agreement or any right or obligation hereunder without the prior written consent of Seller, which consent Seller may withhold in its sole and absolute opinion and judgment. Buyer may however, prior to the Close of Escrow, assign and delegate Buyer's rights and obligations hereunder, without Seller's prior written consent, to a corporation, partnership, or limited liability company owned or controlled by Buyer, provided Buyer notifies Seller in writing in advance of any such transfer and provides Seller and Escrow Agent with true and complete copies of all documents evidencing said transfer, all organization documents creating such transferee, and all resolutions and consents authorizing the transfer and assumption of liability and evidencing Buyer's continuing interest in said transferee as hereinafter provided. For purposes of this Agreement, the phrase "owned or controlled by Buyer" means that Buyer is the general partner, or is a limited partner owning at least 51% of all limited partnership interests comprising the partnership. This Agreement shall be binding upon and inure to the benefit of each of the parties hereto and to their respective transferees, successors, and assigns

{E0158 / P0180 / 00008474.DOC V3}                    15

11.12  <u>No Third-Party Beneficiaries</u>.  No third party shall have any rights hereunder.

11.13  <u>Business Days</u>.  If any of the dates specified in this Agreement shall fall on a Saturday, a Sunday or a holiday, then the date of such action shall be deemed to be extended to the next business day.

11.14  <u>Exhibits</u>.  <u>Exhibits A</u> through <u>F</u>, inclusive, attached hereto are incorporated herein by reference.

[SIGNATURES ON NEXT PAGE]

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

**SELLER:**

**MERUELO MADDUX – 845 S. FLOWER STREET, LLC**
a Delaware limited liability company,
debtor and debtor-in-possession

By: _____
Name: _____
Title: _____

**BUYER:**

**WATERMARKE PROPERTIES, INC.**
a California corporation

By: _____
Name: _____
Title: _____

## ACKNOWLEDGEMENT OF RECEIPT AND AGREEMENT OF ESCROW HOLDER

The undersigned acknowledges receipt of this Agreement and agrees to act as Escrow Holder in accordance with the terms of this Agreement.

### CHICAGO TITLE COMPANY

By: _____
Authorized Signatory

Date: February ____, 2010

{E0158 / P0180 / 00008474.DOC V3}                17

36

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

SELLER:                    **MERUELO MADDUX – 845 S. FLOWER STREET, LLC**
                           a Delaware limited liability company,
                           debtor and debtor-in-possession

                           By: _____
                               Name: _____
                               Title: _____


BUYER:                     **WATERMARKE PROPERTIES, INC.**
                           a California corporation

                           By: _____
                               Name: _____
                               Title: _____


## ACKNOWLEDGEMENT OF RECEIPT AND AGREEMENT OF ESCROW HOLDER

The undersigned acknowledges receipt of this Agreement and agrees to act as Escrow Holder in accordance with the terms of this Agreement.


                           **CHICAGO TITLE COMPANY**

                           By: _____
                               Authorized Signatory

                           Date:  February _____, 2010

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

SELLER:                          **MERUELO MADDUX – 845 S. FLOWER STREET, LLC**
                                 a Delaware limited liability company,
                                 debtor and debtor-in-possession

                                 By: _____
                                     Name: _____
                                     Title: _____

BUYER:                           **WATERMARKE PROPERTIES, INC.**
                                 a California corporation

                                 By: _____
                                     Name: _____
                                     Title: _____

**ACKNOWLEDGEMENT OF RECEIPT AND AGREEMENT OF ESCROW HOLDER**

The undersigned acknowledges receipt of this Agreement and agrees to act as Escrow Holder in accordance with the terms of this Agreement, subject to Chicago Title Company's Escrow Instructions, Escrow No. 935082668-M19.

                                 CHICAGO TITLE COMPANY

                                 By: _____
                                     Authorized Signatory

                                 Date: February 12 , 2010

## EXHIBIT A

## LEGAL DESCRIPTION OF PROPERTY

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 1:

LOTS 1 AND 2 IN BLOCK 57 OF HUBER TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGE 280 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ANY PORTION OF SAID LOT 2 LYING WITHIN THE LINES OF TRACT 8936, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 123 PAGE 30 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

LOT A OF TRACT NO. 8936, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 123 PAGE 30 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ALSO THE NORTHEASTERLY 30.24 FEET OF LOT 3 IN BLOCK 57 OF HUBER TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGE 280 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ALSO THE SOUTHWESTERLY 20 FEET OF LOT 4 IN BLOCK 57 OF HUBER TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGE 280 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5144-021-044

## EXHIBIT B

## PROPERTY DOCUMENTS

1.  Preliminary Title Report dated December 2, 2009, prepared by First American Title Insurance Company and Underlying Title Documents (Order No. NCS-421397-LA2 ).

2.  ALTA Survey dated January 16, 2006, prepared by Iacobellis & Associates, Inc. (Project No. 05236 LA 634-E5).

3.  Foundation Shoring Location Survey dated July 9, 2007, prepared by Psomas.

4.  Phase I Environmental Site Assessment dated July 17, 2007, prepared by AEI Consultants.

5.  Soil Oversight and Construction Monitoring and Completion Report dated May 18, 2007, prepared AEI Consultants.

6.  Workplan for Site Assessment and Soil Removal dated May 11, 2006, Prepared by AEI Consultants.

7.  Investigation to Evaluate Recognized Environmental Conditions at the Proposed Southpark Supermarket Development dated November 2001, prepared by Earth Tech, Inc.

8.  Phase I Environmental Site Assessment dated August 2001, prepared by Earth Tech, Inc.

9.  May 7, 2003 Letter from the City of Los Angeles Zoning Administrator regarding Zone Variance, Conditional Use, Site Plan Review.

10. Letter (with Decision Date of May 7, 2003) from Advisory Agency regarding Tract Map No. 53965, including June 18, 2003 Letter of Correction and July 28, 2003 Letter of Correction.

11. June 15, 2005 Letter from the City of Los Angeles Zoning Administrator regarding Extension of Time regarding Conditional Use/Variance.

12. July 7, 2005 Letter from the Advisory Agency regarding Unit Map Recordation.

13. Letter (with Decision Date of December 19, 2005) from the Advisory Agency regarding Revised Map/Modification.

14. 9th & Flower: A South Park Mixed-Use Development – Draft Environmental Impact Report Technical Appendices, dated September 19, 2002, prepared by Christopher A. Joseph & Associates.

15. 9th & Flower: A South Park Mixed-Use Development – Final Environment Impact Report, dated December 9, 2002, prepared by Christopher A. Joseph & Associates.

16. 9th & Flower: A South Park Mixed-Use Development – Addendum to the EIR, dated August 11, 2004, prepared by Christopher A. Joseph & Associates.

17. 9th & Flower: A South Park Mixed-Use Development – Screencheck Addendum to the EIR, dated November 22, 2004, prepared by Christopher A. Joseph & Associates.

# EXHIBIT C

## LEASES AND OTHER AGREEMENTS

NONE

## EXHIBIT D

## DEED

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:

_____

_____

Attention: _____

(Space Above Line for Recorder's Use Only)

## GRANT DEED

APN 5144-021-044

            FOR VALUE RECEIVED, MERUELO MADDUX – 845 S. FLOWER STREET, LLC, a Delaware limited liability company, debtor and debtor-in-possession ("Grantor"), grants to _____ ("Grantee"), all that certain real property situated in the County of Los Angeles, State of California, described on Exhibit A attached hereto and by this reference incorporated herein together with all buildings, improvements and fixtures located thereon and owned by Grantor as of the date hereof and all right, title and interest, if any, that Grantor may have in and to all rights, privileges and appurtenances pertaining thereto including all of Grantor's right, title and interest, if any, in and to all rights-of-way, open or proposed streets, alleys, easements, strips or gores of land adjacent thereto (herein collectively called (the "Property");

            TO HAVE AND TO HOLD the Property with all the rights, privileges and appurtenances thereto belonging, or in any way appertaining, unto the said Grantee and Grantee's successors and assigns;

            SUBJECT TO the lien of any non-delinquent property taxes and any general or special assessments against the Property, and all other liens, encumbrances, easements, covenants, conditions, restrictions and other matters of record.

**GRANTOR:**

            Meruelo Maddux – 845 S. Flower Street, LLC
            a Delaware limited liability company
            debtor and debtor-in-possession

Dated: _____, 2010

By: _____
      Name: _____
      Title: _____

## ATTACH CERTIFICATE OF ACKNOWLEDGEMENT

{E0158 / P0180 / 00008474.DOC V3}        D-1

## EXHIBIT E

## NON-FOREIGN PERSON CERTIFICATE

Meruelo Maddux – 845 S. Flower Street, LLC, a Delaware limited liability company ("**Seller**"), is the transferor of that certain real property located in and more particularly described on <u>Exhibit A</u> attached hereto (the "**Property**").

Section 1445 of the Internal Revenue Code of 1986 (the "**Code**") provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person. To inform the transferee that withholding of tax will not be required in connection with the disposition of the Property pursuant to that certain Purchase and Sale Agreement and Joint Escrow Instructions by and between Seller and Watermarke Properties, Inc., a California corporation, the undersigned certifies the following on behalf of Seller:

1.      Seller is not a foreign corporation, foreign partnership, foreign trust or foreign estate, as those terms are defined in the Code and the regulations promulgated thereunder;

2.      Seller is not a disregarded entity as defined in § 1.1445-2(b)(2)(iii);

3.      Seller's U.S. employer identification number is _____ ; and

4.      Seller's address is 761 Terminal Street, Building 1, Second Floor, Los Angeles, California 90021.

It is understood that this certificate may be disclosed to the Internal Revenue Service and that any false statement contained herein could be punished by fine, imprisonment, or both.

Under penalties of perjury I declare that I have examined the foregoing certification and, to the best of my knowledge and belief, it is true, correct and complete, and I further declare that I have authority to sign this document on behalf of Seller.

Date: _____, 2008      Signature: _____

## EXHIBIT F

## BILL OF SALE AND ASSIGNMENT OF WARRANTIES

This Bill of Sale and Assignment of Warranties (hereinafter "Sale Assignment") is entered into as of the _____ day of _____, 2010 by and between MERUELO MADDUX – 845 S. FLOWER STREET, LLC, a Delaware limited liability company, debtor in-possession ("Assignor"), and Watermarke Properties, Inc, a California corporation ("Assignee"). This Sale Assignment is being executed and delivered by the parties pursuant to that certain Purchase and Sale Agreement and Joint Escrow Instructions between the parties dated as of February 5, 2010 (the "Sale Agreement"). This Sale Assignment is being delivered as a part of the Closing (as defined in the Sale Agreement) and shall be effective as of the Closing. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Sale Agreement.

1. <u>Sale and Assignment</u>. For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Assignor and Assignee, and subject to the provisions of Paragraph 3 below, Assignor hereby sells, conveys, assigns and transfers unto Assignee all of Assignor's right, title and interest in and to the tangible personal property located on the Property, as defined in the Sale Agreement and more particularly described in <u>Exhibit A</u> attached hereto, and in and to any warranties that Seller may have from any contractors, manufacturers, suppliers and/or others who provided or performed any scope of the work in the development of the Property ("**Warranties**", and together with the other personal property, the "**Personal Property**"). Such sale and assignment of the Personal Property is subject to the rights of the preparers of the items included in the Personal Property and is made by Assignor without representation or warranty of any kind or nature.

2. <u>Disclaimers</u>.

(a)    ASSIGNOR MAKES NO WARRANTY, EXPRESS OR IMPLIED, REGARDING THE PERSONAL PROPERTY, AND ASSIGNOR DISCLAIMS ANY WARRANTY, EXPRESS OR IMPLIED, THAT THE PERSONAL PROPERTY IS MERCHANTABLE. ASSIGNEE ACKNOWLEDGES THAT THE PERSONAL PROPERTY IS TRANSFERRED AS-IS AND WITH ALL FAULTS.

(b)    Assignee acknowledges and agrees that the transfers pursuant to this Sale Assignment are being made to extent assignable and subject to any consent rights which any third party may have with respect to such transfers, that Assignee shall be responsible for obtaining any such consents at Assignee's sole cost and expense and that Assignor has not made, and hereby disclaims, any express or implied representation, warranty or agreement whatsoever with respect to such transfers, including, but not limited to, any express or implied representation, warranty or agreement that any such consents can or will be obtained, or any express or implied representation, warranty or agreement as to the existence and/or scope of the Personal Property or as to its fitness for any particular use or purpose.

3.  <u>Reservation of Rights by Seller</u>.  Notwithstanding anything to the contrary in this Sale Assignment, the assignment of Warranties is made on a non-exclusive basis, and Seller hereby reserves all rights, including rights of enforcement, under the Warranties.

4.  <u>Amendment; Successors and Assigns</u>.  This Sale Assignment may not be altered or amended except with the written consent of each of the parties hereto.  This Sale Assignment shall be binding upon and inure to the benefit of the respective successors and assigns of the parties hereto.

5.  <u>Governing Law</u>.  This Sale Assignment shall be construed and enforced in accordance with, and governed by, the laws of the State of California.  The Bankruptcy Court (as defined in the Sale Agreement) shall retain exclusive jurisdiction to resolve any and all disputes pertaining to this Sale Assignment, including without limitation the enforcement and interpretation of any of its terms, and Seller and Buyer agree to submit to the jurisdiction of the Bankruptcy Court for the purpose of resolving such disputes.

6.  <u>Counterparts</u>.  This Sale Assignment may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute but one and the same instrument.

7.  <u>Captions</u>.  The captions of the paragraphs of this Sale Assignment are solely for the convenience of the parties and are not to be used in construing or enforcing any of the provisions hereof.

8.  <u>Attorneys' Fees</u>.  In the event any party hereto institutes against any other party hereto any action or proceeding, in law, equity or otherwise, to enforce or construe the terms and conditions of this Sale Assignment, the prevailing party in any such proceeding shall be entitled, in addition to any other relief awarded by the court or other tribunal, to its reasonable costs and expenses, including expert fees and reasonable attorneys' fees, incurred in any such action.

IN WITNESS WHEREOF, the parties hereto have caused this Sale Assignment to be executed as of the date and year first above written.

"ASSIGNOR"
MERUELO MADDUX-845S. FLOWER STREET, LLC
a Delaware limited liability company,
debtor in-possession

By:

Name: _____

Its: _____

{E0158 / P0180 / 00008474.DOC V3} E-3

"ASSIGNEE"
WATERMARKE PROPERTIES, Inc.,
a California corporation

By: _____

Name: _____

Its: _____

## FIRST AMENDMENT TO PURCHASE AND SALE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS

THIS FIRST AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS ("Amendment") is made March 5, 2010 between MERUELO MADDUX – 845 S. FLOWER STREET, LLC, a Delaware limited liability company, debtor and debtor-in-possession ("Seller"), and WATERMARKE PROPERTIES, INC., a California corporation ("Buyer"), with reference to the following facts:

### RECITALS

A.     Buyer and Seller are parties to the Purchase and Sale Agreement and Joint Escrow Instruction dated February 5, 2010 ("Agreement"), with respect to property at 705 W. Ninth Street, Los Angeles, California. All capitalized terms not defined herein shall have the meanings given to such terms in the Agreement.

B.     Seller and Buyer desire to amend the Agreement in accordance with the terms of this Amendment.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree as follows:

1.     Waiver of Contingencies. Buyer hereby waives its rights to terminate the Agreement as provided in Paragraphs 2.2 and 2.3 of the Agreement, and acknowledges and agrees that there are no further conditions or contingencies to Buyer's obligation to purchase the Property pursuant to the Agreement other than Buyer's Conditions provided in Article 5 and as otherwise provided in Article 9 of the Agreement and subject to Seller's representations and warranties as provided in Article 4. Buyer approves the Property, its condition, and all matters related thereto, subject to Seller completing the Completion Work (as defined in paragraph 3 herein). Buyer further acknowledges and agrees that the Deposit is nonrefundable to Buyer and fully earned by Seller, except to the extent Closing fails to occur as a result of Seller's default or breach or a failure of Buyer's Conditions set forth in Article 5, or as otherwise provided in Article 9, of the Agreement. Seller and Buyer agree that the Permitted Exceptions shall be as set forth on Schedule 1 attached hereto.

2.     Purchase Price Credit. At Closing, Seller will provide Buyer with a $500,000 credit against the Purchase Price, in consideration of Seller not having to purchase or install window coverings.

3.     Buyer's Conditions. The following are added as new Paragraphs 5.1.5 and 5.1.6 of the Agreement.

"5.1.5  Completion Work. Seller has obtained a final certificate of occupancy for the building on the Property (which may exclude the commercial space) and

{E0158 / P0180 / 00008560.DOC V2}                    1

completed the punchlist work as set forth in <u>Schedule 2</u> attached to this Amendment ("Completion Work").

5.1.6   <u>Lease</u>.  Seller has negotiated a written lease with the restaurateur identified in the letter of intent dated February 16, 2010 ("LOI," a copy of which has been delivered to Buyer) in form acceptable to Buyer ("Lease"); provided, that if this condition is not satisfied by 5:00 p.m. (Los Angeles time) on April 5, 2010, either Seller or Buyer may terminate this Agreement by written notice to the other, in which case this Agreement shall terminate and Escrow Holder shall return to Buyer the Deposit, and any interest thereon, and Seller and Buyer shall be released from any further obligation and liability to the other under this Agreement (except for Buyer's obligations and liabilities that may have arisen under <u>Paragraph 2.4</u>).  If Buyer desires Seller to enter into the Lease prior to Closing, upon mutual execution of the Lease by Lessee and Seller, Buyer shall immediately release $300,000 of the Deposit to Seller ("Released Deposit"). Buyer further acknowledges and agrees that the Released Deposit is nonrefundable to Buyer and fully earned by Seller, except to the extent Closing fails to occur as a result of Seller's default or breach or a failure of Buyer's Conditions set forth in <u>Article 5</u>, or as otherwise provided in <u>Article 9</u>, of the Agreement.  The Lease will be acceptable to Buyer if the terms are consistent with or more favorable than those in the LOI (not including the exclusive right to cater to residents).

4.    <u>Seller's Conditions</u>.  The reference to "June 4, 2010" in <u>Paragraph 5.2.4</u> of the Agreement is replaced with "August 4, 2010."

5.    <u>Insurance</u>.  Seller shall use commercially reasonable efforts (without cost to Seller) to cause its insurers to add Buyer as an additional or named insured on Seller's policies identified in <u>Schedule 3</u> attached hereto; provided, nothing in this paragraph 5 is or shall be deemed to be a condition or contingency of any of Buyer's obligations under the Agreement and the failure of Seller to achieve or satisfy any matter contained in this paragraph 5 shall not delay the Closing Date or otherwise alter or limit Buyer's obligations to purchase the Property on the Closing Date.

6.    <u>Counterparts</u>.  This Amendment may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument.  Signatures of a party may be delivered by facsimile or email which shall be deemed delivery of the original.

7.    <u>Entire Agreement</u>.  The Agreement, as modified by this Amendment, contains the entire agreement between Buyer and Seller as to the subject matter hereof and supersedes any prior agreements, negotiations and communications, oral or written.

8.    <u>Effect on Agreement</u>.  Except as modified by this Amendment, the Agreement remains unchanged and in full force and effect.

{E0158 / P0180 / 00008560.DOC V2}

2

IN WITNESS WHEREOF, Seller and Buyer have executed this Amendment as of the date first written above.

**SELLER:**

**MERUELO MADDUX – 845 S. FLOWER STREET, LLC**
a Delaware limited liability company,
debtor and debtor-in-possession

By: _____
Name: John Charles Maddux
Title: President

**BUYER:**

**WATERMARKE PROPERTIES, INC.**
a California corporation

By: _____
Name: Jeff Teorsi
Title: CEO / President

## SCHEDULE 1

### Permitted Exceptions

1.    The Title Company's standard printed exceptions.

2.    The lien(s) of any nondelinquent general or special taxes or assessments.

3.    Any water rights exception with a CLTA 103.5 or similar endorsement.

4.    Any exceptions or matters created by, through or under Buyer or its affiliates or their respective contractors, consultants, or other persons or entities controlled by Buyer.

5.    The following title exceptions set forth on Schedule B of that certain Preliminary Report dated as of February 2, 2010, issued by Title Company (Order No. 106745648-X59), as modified and/or supplemented by that certain Supplemental Report dated as of March 3, 2010, issued by Title Company (Order No. 106745648-X59): Title exception nos. A, B, C, D, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 16, 17, 18, 23, 29, 51 and 52, and the rights of the lessee under the lease referenced in Paragraph 5.1.6 of the Agreement, as amended, if entered into in accordance with the Agreement, as amended.

Schedule 2

ORIGINAL



WATERMARK
Properties

### 705 W 9th Street Buyer's Unit Punch List

| Item | Comments |
|---|---|
| Parking Garage Sealant | The parking garage sealant in the 6th floor parking garage ceiling is leaking and has damaged drywall soffit; repairs underway at time of site visit included under warranty |
| Sealant joint at concrete access port in parking garage - causing leak into basement | provide sealant to access port perimeter joint - under warranty |
| Lobby travertine stone paver cracked and depressed | Included under warranty |
| Hydraulic elevator | The inside door panel on the basement to ground level hydraulic elevator is damaged caused by subcontractor construction traffic. Repair is responsibility of contractor. |
| Fob/Camera | Finish |
| Parking | Large leak and mold in D/W above spot 617/616 / Ponding water spot 618/619 / Open electrical box space 629 / Concrete off set space 547 doesn't look structural / Ponding at 519 look like it comes from sanitary pipe / Moisture coming through crack space 517 / Holes in concrete space 470 / Water stains from ponding space 466 / Ponding stains at every level where next level starts i.e. 5 turns to 4, 4 turns to 3 / Leak coming down wall space 308 / Plugger conduit near electrical was this condensate drain space 302 |
| Drainage: Penthouse | All Penthouse units have drainage issue on balconies:  Water pools in large quantities |
| Cracked Glass | 3 panels of green cover window: visible from the diving board deck |

**ORIGINAL**



**705 W 9th Street Buyer's Unit Punch List**

Prepared: 3-3-10

| Unit # | Description |
|---|---|
| 701 | Baseboard by fridge is nicked / fridge not flush with cabinets / floor by stairs scratched / light cans not flush |
| 702 | Entry floor scratches / bathroom sink plug needs alignment / broken socket cover in bedroom / D/W door not flush in kitchen / patio door inoperable / bedroom socket cover / bedroom closet light cover / baseboard at top of stairs / bathroom sink drawers / paint around socket in closet area of bedroom |
| 801 | Qtr round not flush at island / shower door needs adjustment |
| 802 | Heavy scratching on floor near closet / paint scuffs at vent above closet / chip in cabinet face of D/W |
| 803 | Under-Cabinet lighting doesn't work / crack in ceiling by D/W / door handle to laundry needs adjustmen |
| 804 | Qtr round in kitchen needs adjustment / scratch on floor by island / broken joint in floor left of deck / facet has low water pressure / ding in drywall in bedroom / cracking in drywall above shower |
| 805 | Broken tile at bath 2 shower enclosure / water damage in bedroom closet from fire sprinkler / water damage in ceiling of master closet / balcony door needs adjustment |
| 806 | Kitchen island qtr round base gap / shower door needs adjustment / closet door casing needs fixed / paint on floor by kitchen |
| 807 | Black mark on window frame |
| 808 | Bow in D/W / paint on carpet in the master closet / broken tile in shower / cracked glass in shower / no rubber water stop / screw in bottom right front door casing |
| 901 | Fire sprinkler missing / door next too oven doesn't close well (see pic) / water leaking from washer, dryer / baseboard on island not glued / fire sprinkler in closet |
| 902 | Island baseboard not glued / washer handle will not open / sink doesn't properly drain / sunk floorboard by window |
| 903 | |
| 904 | Missing BA window (see pic) / blue tape in laundry room (see pic) / balcony door not working |
| 905 | Facet in ba missing filter / shower door needs glued / bd door entry tape? |
| 906 | Bad cabinet / shower valve lever missing ; Bathroom shower valve missing lever |
| 907 | Shower door doesn't open well / taped island corner? / island quarter-round off, not glued |
| 908 | Touch up paint in entry way (see pic) / balcony entry (blue rags) needs to be sealed from outside / baseboard at entry (see pic) / shower glass hinge broken |
| 1001 | Balcony door doesn't open |
| 1002 | Black mark on wall / kitchen floor scratched / water damage to wood floor: fridge leak |
| 1003 | Fridge leak / paint scuffs in kitchen |
| 1004 | Smoke detector going off / fridge leak / shower door is loose / blue scuffs on outlet outside of master bedroom |

52

**ORIGINAL**

| | |
|---|---|
| 1005 | Glue on walls in closet of bedroom 2 / paint touch up entire wall opposite window in living room / paint scuffs next to closet door in master bedroom / fridge leaking / rough spot on counter granite top |
| 1006 | Brown paint on white upper kitchen cabinet / nail holes in island qtr round / touch up paint on closet shelves |
| 1007 | Floor scratched near entry way / damaged floor near sink in kitchen |
| 1008 | No caulk or paint on baseboards right of kitchen / laminate coming off closet shelving / large scuffs on baseboard outside of bath |
| 1101 | W/D on pause / BA light socket pulled out / shower door loose / BD door frame dented / balcony rubble / depression at doorstep / BA showerdoor loose / paint scuffs in BD 2 |
| 1102 | Cabinet door next to fridge is loose / shower door doesn't close well / scuffed baseboards |
| 1103 | Shower door uneven at entry /  deep scratch on floor next to island |
| 1104 | Cabinet next to stove / BD 2 dent on door frame / loose showerdoor / light in closet out / BA 2 door scratched |
| 1105 | |
| 1106 | Dust on floor / cabinet displacement above fridge |
| 1107 | W/D doesn't lock / blue tape / shower door not level / BA cabinet doesn't close / floor boards displaced by window / nicks on kitchen ceiling / loose door handle in BA |
| 1108 | Door scrathed / W/D outside of inset / spacing in baseboards / possible leaking fridge / kitchen cabinets not flush / backside of bedroom door / BA cabinet doesn't close / shower door loose / closet doorway board displaced / cracking in doorway to BD 2 |
| 1201 | Drawer left of stove is damaged (pic 19) |
| 1202 | Qtr round at kitchen island not nailed in / light out above island / stovetop doesn't turn on |
| 1203 | Small chips in floor by stove |
| 1204 | Qtr round needs caulked and painted at kitchen island |
| 1205 | Paint chipped off baseboard by entry way door / small chips in floor by stove |
| 1206 | Caulk and paint Qtr round in kitchen / fridge doesn't turn on / W/D not installed, sitting in middle of bathroom |
| 1207 | Scratched floor by kitchen sink |
| 1208 | Caulk and paint baseboard at entry and alcove / drawers need adjustment / scratch in door at bedroom 2 / no TP dispenser in bath 2 / large scratch in baseboard outside bedroom 2 / door to balcony doesn't close: needs adjustment / no door hung at toilet room / caulk and paint baseboard in master closet |
| 1401 | Black marks on baseboard in bedroom / scratches on kitchen floor |
| 1402 | Dishwasher color doesn't match the rest of the cabinets / dishwasher alignment is off / no rubber stops on cabinets in island |
| 1403 | |
| 1404 | Cabinet right of stove needs adjustment, drawer doesn't close / no vent for cover in master bath / shower enclosure is not square / baseboard is beat up outside bedroom |
| 1405 | Small chip in ceiling in entry way / chip on corner of wall at end of entry way (pic 20) / scratches on kitchen floor by stove / broken drawer in master bathroom |
| 1406 | Laminate coming off bathroom door |
| 1407 | Scratches on floor by kitchen sink / loose handles on bathroom cabinet and drawer |

ORIGINAL

| | |
|---|---|
| 1408 | Fridge leaking / caulk, nail, paint in base in kitchen / caulking, paint on base in living room / chip in doorjam at bedroom 2 / lights out in closet in bedroom 2 / toilet stained in bathroom 2 / broken tile in shower / master closet : touch up paint / master bedroom doors don't stay shut |
| 1501 | W/D doesn't open / kitchen cabinet off track / stain on carpet / insulation missing on southwest corner window |
| 1502 | |
| 1503 | Scraped cabinet in island / uneven cabinet above fridge / cabinet next to sink / holes on closet pole (blue tape) / W/D door doesn't open |
| 1504 | Bedroom baseboard scuffs / towel racks |
| 1505 | Handle scrathed on cabinet next to island / blue tape on ceiling / blue tape on BD 1 door frame / door handle installed wrong |
| 1506 | Water stain on kitchen floor / shower floor green / bathroom door knob missing ; Dish washer leaking |
| 1507 | Washer and cabinet not level / uneven baseboards / W/D don't open / closet door fame cracked / ba cabinet doesn't shut properly |
| 1508 | Bathroom doorway paint / back of front door scuffed |
| 1601 | Scratches on kitchen floor / small chip on ceiling in kitchen / chipped paint on cabinet in master bath (pic 21) / drawer needs adjustment in master bath / small chip on ceiling in kitchen |
| 1602 | Floor in kitchen has gouges |
| 1603 | Small chip in entry way floor / loose floor boards by window (pic 22) |
| 1604 | Large gap in metal window outside master bedroom / glue on baseboard in bedroom 2 |
| 1605 | Cracked tile in shower door encasing / scratches on kitchen floor |
| 1606 | |
| 1607 | Stove area under construction (pic 23) / marks on baseboards by windows / high pressure on facet in bathroom sink |
| 1608 | Scuffed up baseboards in bedroom / exposed electrical box on floor by patio window |
| 1701 | BD 1 electrical socket cracking / scrape on wall / BA 2 light out |
| 1702 | |
| 1703 | Strips of floorboard by window missing |
| 1704 | Baseboard at entry scuffed / needs touch up paint throughout / kitchen floor scratched / fridge leak |
| 1705 | Floor scratched at entry way / cabinets not even in kitchen / d/w blue tape / very dusty / corner damaged by entrance to BD 1 / cracks on bd 1 sliding door |
| 1706 | Smells / touch up paint |
| 1707 | Kitchen cabinets / baseboard not complete / trim cracked at kitchen island / washer locked / ba blue tape: paint |
| 1708 | Unit unfinished: floor not sanded, baseboards not painted / bedroom doors not flush / patio door needs adjustment / Not complete / floor boards not finished or painted |
| 1801 | Chipped paint on shelf in entry way closet / fridge leak / patio door needs adjusted (won't shut) / cracked tile in master shower door encasing |
| 1802 | |
| 1803 | Loose floor board by window / water sealant around shower door is falling off |
| 1804 | |
| 1805 | Cracked tile in shower door encasing |
| 1806 | |
| 1807 | |
| 1808 | |

ORIGINAL

| | |
|---|---|
| 1901 | W/D locked / kitchen upper cabinet by stove not working / cabinets not flush / fridge wak leaking at one point |
| 1902 | |
| 1903 | Top cabinets by stove not working smoothly / paint chipping at west corner below window |
| 1904 | |
| 1905 | Island top cabinet drawers |
| 1906 | |
| 1907 | B/D locked / ba door handle not screwed well |
| 1908 | Bathroom floor board scuffed / patio door needs adjustment / bedroom door not flush / bedroom ceiling needs touch up paint / bathroom door scratched |
| 2001 | |
| 2002 | Drawer left of stove needs adjustment |
| 2003 | |
| 2004 | |
| 2005 | |
| 2006 | Top of cabinets on back of kitchen island are scuffed |
| 2007 | Broken cabinet under kitchen sink |
| 2008 | Loose floor board by bedroom next to kitchen |
| 2101 | Kitchen cabinets: 3 stick, bottom doesn't close well / BA blue tape / closet blue tape / D/W piece on counter top / W/D locked, smells funny |
| 2102 | touch up paint, baseboards not painted |
| 2103 | Closet blue tape / ba closet blue tape |
| 2104 | Patio door busted / touch up paint |
| 2105 | Fridge has leaked: water stain |
| 2106 | Garbage disposal not working / fridge leak |
| 2107 | Shower door uneven / D/W piece missing put on counter top / electrical socket missing |
| 2108 | Bedroom door won't close / bedroom fire sprinkler leak |
| 2201 | 2 drawers need adjusted in right bathroom / chip in floor in living room |
| 2202 | |
| 2203 | |
| 2204 | Scratches in floor in kitchen / lights out in kitchen |
| 2205 | Deep scratches by doorway to bedroom |
| 2206 | |
| 2207 | Chip on floor next to kitchen island |
| 2208 | Vent in kitchen hanging / garbage disposal not working / missing towel hanger |
| 2301 | Cabinet next to sink is stuck / bottom cabinet stuck as well |
| 2302 | Shower door is set in wrong direction |
| 2303 | Drywall work on closet: needs to be cleaned / BA cabinets: don't open smoothly |
| 2304 | Bathroom missing towel holders |
| 2305 | Kitchen fan sounds odd / BA 2 top cabinet doesn't close |
| 2306 | Baseboard needs touch up / closet door is scuffed in bedroom |
| 2307 | Dusty / needs cleaning |
| 2308 | Patio door needs adjustment / bedroom door knobs need tightening / same for shower door handle / touch up paint / |
| 2401 | Chipped paint all around door to bathroom |
| 2402 | Island drawer doesn't close / scratches on kitchen floor / |
| 2403 | |
| 2404 | Adjust lock at balcony door / scratches on entry floor |
| 2405 | |
| 2406 | Garbage disposal doesn't work / damaged floor from fridge |



| | |
|---|---|
| 2407 | Small crack in tile in shower door encasing |
| 2408 | Doors right of kitchen need adjusted / light in bedroom 2 is out / balcony door lock doesn't work |
| 2501 | 3 stuck cabinets by sink / BA 1 mirror not installed / bottom drawer has hole / BA 2 shower door is loose |
| 2502 | Touch up paint |
| 2503 | Upper left cabinet door doesn't close properly |
| 2504 | Touch up paint |
| 2505 | BA 1 shower door uneven / upper left stove cabinet doesn't close / BA 2 shower door uneven - drags |
| 2506 | bathroom sink missing hardware / shower needs touch up |
| 2507 | Smells terrible / floor scratched from fridge / toilet doesn't flush properly |
| 2508 | Touch up |
| 2601 | |
| 2602 | Door to laundry has broken handle |
| 2603 | |
| 2604 | Fridge leak / paint touch up above shower in master bath |
| 2605 | Drawer right of kitchen sink needs adjusted |
| 2606 | |
| 2607 | Deep scratches in floor next to kitchen island |
| 2608 | Bottom drawer right of sink needs adjustment |
| 2701 | Scuffs on front door / BA 1 missing facet filter |
| 2702 | |
| 2703 | Cabinet by stove not working / floor scrathed from fridge / dust under island |
| 2704 | Patio door needs adjustment |
| 2705 | BA 1 facet filter missing / BA 2 shower door doesn't close well |
| 2706 | Touch up paint on baseboards |
| 2707 | Smells terrible / fridge makes clicking sound / W/D closet smells terrible: stale water / garbage disposal not working |
| 2708 | Bathroom facet missing filter (both bathrooms) |
| 2801 | Drawers right of kitchen sink need adjusted / shower door needs adjusted |
| 2802 | |
| 2803 | |
| 2804 | |
| 2805 | |
| 2806 | |
| 2807 | |
| 2808 | Big scratch in floor from fridge |
| 2901 | Fridge has leaked: water stain |
| 2902 | |
| 2903 | Drawers next to stove need adjusted |
| 2904 | |
| 2905 | Balcony door held by duct tape |
| 2906 | |
| 2907 | BA doors don't pull smoothly |
| 2908 | |
| 3001 | Hole in cabinet right of sink in bathroom |
| 3002 | |
| 3003 | |
| 3004 | |
| 3005 | |
| 3006 | |



| | |
|---|---|
| 3007 | Touch up |
| 3008 | Balcony door needs adjustment |
| 3101 | BA door doesn't close / BA 1 drawers are uneven / BA 2 mirror not installed |
| 3102 | |
| 3103 | |
| 3104 | Needs cleaning / balcony door won't lock / door needs adjustment / bedroom floor boards |
| 3105 | Balcony door doesn't shut / uneven baseboards under window |
| 3106 | Needs cleaning / stove not working |
| 3107 | |
| 3108 | Master bedroom door needs adjustment, same for guest bedroom / guest bathroom towel fixture |
| 3201 | |
| 3202 | Kitchen facet broken |
| 3203 | |
| 3204 | |
| 3205 | |
| 3206 | |
| 3207 | Touch up on floor |
| 3208 | Balcony door broken |
| 3301 | Floor scratched from fridge / no facet filter in BA 1 / BA 2 showerdoor doesn't close and facet filter missing |
| 3302 | |
| 3303 | BA drawer doesn't pull smoothly |
| 3304 | Bedroom carpet |
| 3305 | BA 1: no facet filter / large scratch on floor near island |
| 3306 | Bathroom facet missing filter |
| 3307 | Shower door doesn't close / no facet filter in ba |
| 3308 | Bathroom facet missing filter |
| 3401 | |
| 3402 | |
| 3403 | |
| 3404 | |
| 3405 | Door to balcony needs adjusting |
| 3406 | |
| 3407 | |
| 3408 | Small bedroom door does not stay closed |
| 3501 | Downstairs bathroom counters are seperated / balcony flooding |
| 3502 | Downstairs bathroom shower needs touch up / flooding on balcony |
| 3503 | Water pressure pool / floor near fridge may have water damage / balcony flooding |
| 3504 | Balcony door needs adjustment / bedroom leak from roof / upstairs balcony door needs adjustment / flooding on balcony |

## SCHEDULE 3

1.  Policy Number CNGP001310 with Gemini Insurance Company.

2.  Policy Number 71R2000076-061 with Everest National Insurance Company.

3.  Policy Number ELU728588/01/2006 with Axis Surplus Insurance Company.

{E0158 / P0180 / 00008561.DOC V1}

## SECOND AMENDMENT TO PURCHASE AND SALE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS

THIS SECOND AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS ("Amendment") is made April 1, 2010 between MERUELO MADDUX – 845 S. FLOWER STREET, LLC, a Delaware limited liability company, debtor and debtor-in-possession ("**Seller**"), and WATERMARKE PROPERTIES, INC., a California corporation ("**Buyer**"), with reference to the following facts:

### RECITALS

A.     Buyer and Seller are parties to the Purchase and Sale Agreement and Joint Escrow Instruction dated February 5, 2010 ("Original Agreement"), as amended by the First Amendment to Purchase and Sale Agreement and Joint Escrow Instruction dated March 5, 2010 ("First Amendment," which together with the Original Agreement is referred to as the "Agreement"), with respect to property at 705 W. Ninth Street, Los Angeles, California. All capitalized terms not defined herein shall have the meanings given to such terms in the Agreement.

B.     Seller and Buyer desire to amend the Agreement in accordance with the terms of this Amendment.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree as follows:

1.     Waiver of Conditions. Buyer hereby irrevocably waives all conditions contained in Paragraphs 5.1.5 and 5.1.6 of the Agreement, which were added pursuant to the First Amendment.

2.     Post-closing Agreement. Concurrent with this Amendment, Buyer and Seller are entering into a Post-closing Agreement, which shall become effective upon the Closing.

3.     Counterparts. This Amendment may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument. Signatures of a party may be delivered by facsimile or email which shall be deemed delivery of the original.

4.     Entire Agreement. The Agreement, as modified by this Amendment, contains the entire agreement between Buyer and Seller as to the subject matter hereof and supersedes any prior agreements, negotiations and communications, oral or written.

5.     Effect on Agreement. Except as modified by this Amendment, the Agreement remains unchanged and in full force and effect.

IN WITNESS WHEREOF, Seller and Buyer have executed this Amendment as of the date first written above.

SELLER:                MERUELO MADDUX – 845 S. FLOWER STREET, LLC
                       a Delaware limited liability company,
                       debtor and debtor-in-possession

                       By: _____
                           Name: _Richard Meruelo_____
                           Title: _Chairman_____

BUYER:                 WATERMARKE PROPERTIES, INC.
                       a California corporation

                       By: _____
                           Name: _____
                           Title: _____

IN WITNESS WHEREOF, Seller and Buyer have executed this Amendment as of the date first written above.

**SELLER:**

**MERUELO MADDUX – 845 S. FLOWER STREET, LLC**
a Delaware limited liability company,
debtor and debtor-in-possession

By: _____
    Name: _____
    Title: _____

**BUYER:**

**WATERMARKE PROPERTIES, INC.**
a California corporation

By: _____
    Name: _____
    Title: _____

JF/0158 / P01801 / 00008632.DOC V12

2

# POST-CLOSING AGREEMENT

THIS POST-CLOSING AGREEMENT ("Agreement") is made April 1, 2010 between MERUELO MADDUX – 845 S. FLOWER STREET, LLC, a Delaware limited liability company, debtor and debtor-in-possession ("**Seller**"), and WATERMARKE PROPERTIES, INC., a California corporation ("**Buyer**"), with reference to the following facts:

## RECITALS

A.     Buyer and Seller are parties to the Purchase and Sale Agreement and Joint Escrow Instruction dated February 5, 2010 ("Original Agreement"), as amended by the First Amendment to Purchase and Sale Agreement and Joint Escrow Instruction dated March 5, 2010 ("First Amendment," which together with the Original Agreement is referred to as the "Agreement"), with respect to property at 705 W. Ninth Street, Los Angeles, California. All capitalized terms not defined herein shall have the meanings given to such terms in the Agreement.

B.     Seller and Buyer are concurrently entering into a Second Amendment to Purchase and Sale Agreement and Joint Escrow Instruction ("Second Amendment"), and in connection therewith, desire to address certain post-Closing items as more particularly described in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree, effective as of the Closing, as follows:

1.     Punchlist and Warranties. To the extent not already completed, Seller shall (a) complete the punchlist work as set forth in Schedule 2 attached to the First Amendment; and (b) obtain and assemble for Buyer a complete set of Warranties as defined in the Bill of Sale attached to the Agreement.

2.     Other Post-closing Items. To the extent not already completed, Seller shall use its commercially reasonable efforts (without material cost to Seller) to do the following: (a) assist Buyer in negotiating and entering into a written lease with the restaurateur identified in the letter of intent dated March 10, 2010 ("LOI"), on terms consistent with the LOI and otherwise acceptable to Buyer; (b) assist Buyer with respect to the submittal and processing of applications for permits for improvements or alterations to the Building as contemplated by Buyer; and (c) cause its insurers to add Buyer as an additional or named insured on Seller's policies identified in Schedule 3 to the First Amendment; provided, however, Seller makes no promises, representations or warranties as to the success of, and shall have no liability to Buyer for the failure of, Seller's efforts with respect to any of the foregoing in this paragraph.

3.     Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one

{E0158 / P0180 / 00008633.DOC V1}

and the same instrument. Signatures of a party may be delivered by facsimile or email which shall be deemed delivery of the original.

    4.    <u>Entire Agreement</u>.  This Agreement contains the entire agreement between Buyer and Seller as to the subject matter hereof and supersedes any prior agreements, negotiations and communications, oral or written.

    IN WITNESS WHEREOF, Seller and Buyer have executed this Agreement as of the date first written above.

**SELLER:**

**MERUELO MADDUX – 845 S. FLOWER STREET, LLC**
a Delaware limited liability company,
debtor and debtor-in-possession

By: _Miguel Meruelo_
Name: _Richard Meruelo_
Title: _Chairman_

**BUYER:**

**WATERMARKE PROPERTIES, INC.**
a California corporation

By: _____
Name: _____
Title: _____

{E0158 / P0180 / 00008633.DOC V1}

2

and the same instrument. Signatures of a party may be delivered by facsimile or email which shall be deemed delivery of the original.

    4.    <u>Entire Agreement</u>. This Agreement contains the entire agreement between Buyer and Seller as to the subject matter hereof and supersedes any prior agreements, negotiations and communications, oral or written.

IN WITNESS WHEREOF, Seller and Buyer have executed this Agreement as of the date first written above.

**SELLER:**          **MERUELO MADDUX – 845 S. FLOWER STREET, LLC**
a Delaware limited liability company,
debtor and debtor-in-possession

By: _____
    Name: _____
    Title: _____

**BUYER:**          **WATERMARKE PROPERTIES, INC.**
a California corporation

By: _____
    Name: _____
    Title: _____

1F0158  P0180  00008633 DOC V1:

2

# EXHIBIT "B"

## Meruelo Maddux - 845 S. Flower Street, LLC - Creditors[1]

| Secured Creditor | Debtor's Amount | Claimant's Amount | Source of Amount |
|---|---|---|---|
| Acco Engineered Systems<br>6265 San Fernando Road<br>Glendale, CA 92102 | $535,949.00 | $535,949.00 | Amount agreed upon by Parties |
| American Heritage Landscape LP<br>7949 Deering Avenue<br>Canoga Park, CA 91304 | $0.00 | $81,061.00 | Dispute as to amount owing and services provided |
| Architectural Glass & Aluminum Co<br>1911 Union Street<br>Oakland, CA 94607 | $575,624.00 | $575,624.00 | Amount agreed upon by Parties |
| Bapko Metal<br>838 N. Cypress Street<br>Orange, CA 92867 | $163,319.00 | $163,319.00 | Amount agreed upon by Parties |
| Buchanan Company<br>1016 East Edna Place<br>Covina, CA 91724 | $8,093.20 | $8,093.20 | Amount agreed upon by Parties |
| Calex Engineering Co.<br>23651 N. Pine Street<br>Newhall, CA 91321 | $60,000.00 | $60,000.00 | Amount agreed upon by Parties |
| Certified Swimming Pools<br>1130 N. Hollywood Way<br>Burbank, CA 91505 | $22,481.45 | $22,481.45 | Amount agreed upon by Parties |
| Complete Door Systems<br>14221 Fern Ave.<br>Chino, CA 91710 | $114,193.00 | $114,193.30 | Amount agreed upon by Parties |
| DK Mechanical<br>3870 E. Eagle Drive<br>Anaheim, CA 92807 | $556,518.00 | $556,518.00 | Amount agreed upon by Parties |
| Gonsalves & Santucci, Inc.<br>5141 Commercial Circle<br>Concord, CA 94520 | $220,000.00 | $220,000.00 | Amount agreed upon by Parties |
| Harris & Ruth Painting<br>2107 W. San Bernardino Road<br>West Covina, CA 91790 | $88,058.00 | $88,058.00 | Amount agreed upon by Parties |
| Hi Teck<br>14001 Ventura Blvd<br>Sherman Oaks, CA 91423 | $11,942.48 | $11,942.48 | Amount agreed upon by Parties |
| Integrity Sheet Metal<br>319 MacArthur Way<br>Upland, CA 91786 | $11,730.50 | $11,730.50 | Amount agreed upon by Parties |
| Martin Brothers Marcowall<br>17104 S. Figueroa St.<br>Gardena, CA 90247 | $831,565.00 | $831,565.00 | Amount agreed upon by Parties |

Exhibit B to Sale Motion
[1]Additional Mechanics Lien Creditors who have been paid in full and who no longer assert a claim have been omitted from the chart.

| Secured Creditor | Debtor's Amount | Claimant's Amount | Source of Amount |
|---|---|---|---|
| McKendry Door Sales<br>16026 Carmentia Road<br>Cerritos, CA 90703 | $15,000.00 | $15,000.00 | Amount agreed upon by Parties |
| Midwest Roofing Co.<br>1305 W. 132nd St.<br>Gardena, CA 90247 | $11,165.38 | $11,165.38 | Amount agreed upon by Parties |
| Mirrors, Showers & Wardrobes<br>26121 Avenue Hall<br>Valencia, CA 91355 | $150,000.00 | $150,000.00 | Amount agreed upon by Parties |
| Mitsubishi Electric & Electronics<br>5665 Plaza Drive<br>Cypress, CA 90630 | $254,116.00 | $254,116.00 | Amount agreed upon by Parties |
| Mr. Crane<br>647 N. Hariton Street<br>Orange, CA 92868 | $180,000.00 | $180,000.00 | Amount agreed upon by Parties, and includes Morrow Equipment. |
| Pacific Pride<br>2738 Poterro Ave.<br>El Monte, CA 91731 | $60,342.00 | $60,342.00 | Amount agreed upon by Parties |
| Pacific Stair Co.<br>851 S. Western Avenue<br>Anaheim, CA 92804 | $120,000.00 | $142,421.00 | Dispute as to amount owing and services provided |
| Sapa Profiles, Inc<br>7320 NE 55th St<br>Portland, OR 97218 | $95,000.00 | $95,000.00 | Amount agreed upon by Parties |
| SCS Flooring Systems<br>6330 San Vicente Blvd., #110<br>Los Angeles, CA 90048 | $0.00 | $4,067,304.00 | Dispute as to amount owing and services provided |
| Seeley Brothers<br>1400 Moonstone<br>Brea, CA 92821 | $36,328.30 | $36,328.30 | Amount agreed upon by Parties |
| Skymaster<br>17837 Maclaren<br>City of Industry, CA 91744 | $39,385.00 | $39,385.00 | Amount agreed upon by Parties |
| Valley Waterproofing<br>825 Cinc Center Drive #6<br>Santa Clara, CA 95050 | $4,755.60 | $4,755.60 | Amount agreed upon by Parties |
| Warner<br>6333 San Fernando Road<br>Glendale, CA 91201 | $13,591.80 | $13,591.80 | Amount agreed upon by Parties |
| XL Fire Protection<br>3022 N. Hesperian Way<br>Santa Ana, CA 92706 | $0.00 | $384,000.00 | Dispute as to amount owing and services provided |
| TOTALS: | $4,179,157.71 | $8,733,944.01 | |

Exhibit B to Sale Motion
¹Additional Mechanics Lien Creditors who have been paid in full and who no longer assert a claim have been omitted from the chart.

# EXHIBIT "C"

68

.1 [XP] 0705

1  JOHN J. BINGHAM, JR. (State Bar No. 075842)
   jbingham@dgdk.com
2  JOHN N. TEDFORD, IV (State Bar No. 205537)
   jtedford@dgdk.com
3  JULIA W. BRAND (State Bar No. 121760)
   jbrand@dgdk.com
4  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   2029 Century Park East, Third Floor
5  Los Angeles, California 90067-2904
   Telephone: (310) 277-0077
6  Facsimile: (310) 277-5735

7  Attorneys for Debtor and Debtor-in-Possession,
   Meruelo Maddux-845 S. Flower Street, LLC
8

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11            SAN FERNANDO VALLEY DIVISION

12  In re                          ) Case No. 1:09-bk-21621-KT
                                    )
13  MERUELO MADDUX - 845 S. FLOWER  ) Chapter 11
    STREET, LLC,                    )
14                                  ) **ORDER AUTHORIZING SALE OF REAL**
            Debtor and Debtor-in-   ) **PROPERTY FREE AND CLEAR OF LIENS**
15          Possession.            ) **AND WAIVER OF 14-DAY STAY PER**
                                    ) **F.R.B.P. 6004(h)**
16                                  ) Date:   April 19, 2010
                                    ) Time:   9:30 a.m.
17                                  ) Ctrm:   "301"
                                    )         21041 Burbank Blvd.
18                                  )         Woodland Hills, CA 91367
                                    )
19                                  )
                                    )
20  _____)

21         On April 19, 2010 at 9:30 a.m., the Court heard and considered the Debtor's *Motion for*

22  *Order Authorizing the Sale of Real Property Free and Clear of Liens* (the "Motion") filed by

23  Meruelo Maddux – 845 S. Flower Street, LLC (the "Debtor"), the Honorable Kathleen Thompson,

24  United States Bankruptcy Judge, presiding.  Appearances were as noted on the record at the

25  hearing.

26         The Court having considered the Motion, all papers filed by the Debtor in support thereof

27  including the Declarations of John Charles Maddux and Richard Meruelo, having heard the

28  statements of counsel at the hearing, having found that Watermarke Properties, Inc., a California

                                    69

352101.2 [XP]

1    corporation, is a good faith purchaser within the meaning of 11 U.S.C. § 363(m), having found that

2    notice of the hearing and the Debtor's request for authority to sell real property under § 363 was

3    adequate and proper under the circumstances, for good cause appearing,

4         **IT IS ORDERED THAT:**

5         1.      The Motion is granted in its entirety.

6         2.      The Debtor is authorized to convey fee title to the real property commonly known as

7    705 West 9th Street, California, APN 5144-021-044 (the "Property") to Watermarke Properties,

8    Inc., a California corporation, or its assignee ("Watermarke"), for $110,000,000 (with a purchase

9    price credit of $500,000 in consideration of the Debtor not having to purchase or install window

10    coverings), pursuant to the terms and conditions of the Purchase and Sale Agreement and Joint

11    Escrow Instructions dated as of February 5, 2010, as amended by the First Amendment to

12    Purchase and Sale Agreement and Joint Escrow Instructions dated as of March 5, 2010 and the

13    Second Amendment to Purchase and Sale Agreement and Joint Escrow Instructions dated as of

14    April 1, 2010 and the Post Closing Agreement dated as of April 1, 2010 that were collectively

15    attached as Exhibit "A" to the Declaration of John Charles Maddux appended to the Motion. The

16    legal description of the Property is set forth in Exhibit "1" hereto.

17         3.      The sale shall be free and clear of all liens, claims, interests and encumbrances

18    ("Liens") against the Property, which Liens shall be removed from the Property, including without

19    limitation the following: (a) all real property tax liens in favor of the County of Los Angeles (the

20    "County"); (b) all liens in favor of any creditors asserting or that may assert mechanics' liens

21    against the Property (collectively, the "Mechanics' Lien Creditors"); and (c) all liens in favor of

22    Canpartners Realty Holding Company IV LLC ("Canyon"), including, without limitation (i) the

23    deed of trust recorded on or about August 5, 2008, as instrument number 20081399532 in favor of

24    Canyon, to secure an indebtedness in the original principal sum of $84,000,000.00; (ii) the

25    Absolute Assignment of Leases, Rents and Income recorded on or about August 5, 2008 as

26    instrument number 20081399533 in favor of Canyon; and (iii) a financing statement filed by

27    Canyon on or about August 5, 2008 as instrument number 20081399534 showing Canyon as the

28    secured party therein.

352101.2 [XP]

25293

1    4.    At closing, the Debtor shall establish a segregated account at City National Bank

2  (the "Remaining Claims Fund"), which may be one of the Debtor's existing construction reserve

3  accounts at City National Bank, to hold funds for payment of the unpaid or disputed Mechanics'

4  Lien Claims and unsecured claims against the Debtor's estate and payment of fees and expenses

5  incurred by Canyon in connection therewith as provided in the Debtor's Settlement Agreement

6  with Canyon (the "Canyon Settlement Agreement") .  At closing, the Remaining Claims Fund shall

7  be funded in an amount not to exceed $10,313,477, comprised of $8,713,477 representing the

8  maximum amount of all unpaid or disputed Mechanics Lien Claims (which amount shall be

9  reduced by any Mechanics' Lien Claims paid after entry of this order but prior to closing of the

10  sale), $100,000 for payment of unsecured claims and $1,500,000 as provided in the Canyon

11  Settlement Agreement.  The Remaining Claims Fund shall be funded with the remaining funds

12  from the Debtor's construction reserve accounts at City National Bank and East West Bank plus

13  proceeds of the sale sufficient to fully fund the Remaining Claims Fund.  East West Bank shall

14  transfer the funds held in the construction reserve account number 0080360357 to the Remaining

15  Claim Fund on or prior to closing of the sale.

16    5.    The Debtor is authorized to pay through escrow all real property taxes and related

17  charges owed to the County and ordinary and reasonable escrow and closing costs.

18    6.    The Debtor is authorized to pay through escrow at closing the amounts required to

19  be paid to Canyon as provided in the Canyon Settlement Agreement. Upon such payment, all liens

20  in favor of Canyon shall be fully satisfied and discharged.

21    7.    Upon payment to Canyon as provided in paragraph 6 above and the establishment of

22  the Remaining Claims Fund at closing, the balance of the sale proceeds shall be free and clear of all

23  Liens.

24    8.    The recordation of this order with the Los Angeles County Recorder's Office shall

25  constitute a discharge, termination and cancellation as to the Property of all of the Liens against the

26  Property without the need for reconveyance or release of such Liens or other interests.

27    9.    Watermarke shall be entitled to all of the protections afforded to good faith

28  purchasers pursuant to 11 U.S.C. § 363(m).

352101.2 [XP]

1      10.    The Debtor is authorized to execute all documents and otherwise take all actions it

2 deems necessary and appropriate to close the sale of the Property to Watermarke.

3      11.    The fourteen day stay of enforcement of this order set forth in Federal Rule of

4 Bankruptcy Procedure 6004(h) is waived, and the terms and conditions of this order shall be

5 immediately effective and enforceable upon its entry.

6                                     # # # # #

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

72

4

352101.2 [XP]

25293

## EXHIBIT A

## LEGAL DESCRIPTION OF PROPERTY

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 1:

LOTS 1 AND 2 IN BLOCK 57 OF HUBER TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGE 280 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ANY PORTION OF SAID LOT 2 LYING WITHIN THE LINES OF TRACT 8936, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 123 PAGE 30 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

LOT A OF TRACT NO. 8936, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 123 PAGE 30 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ALSO THE NORTHEASTERLY 30.24 FEET OF LOT 3 IN BLOCK 57 OF HUBER TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGE 280 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ALSO THE SOUTHWESTERLY 20 FEET OF LOT 4 IN BLOCK 57 OF HUBER TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGE 280 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5144-021-044

| In re: MERUELO MADDUX - 845 S. FLOWER STREET, LLC, | CHAPTER:  11 |
|---|---|
| Debtor(s). | CASE NUMBER: 1:09-bk-21621-KT |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

### PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Danning, Gill, Diamond & Kollitz, LLP, 2029 Century Park East, Third Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described **NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF JOHN CHARLES MADDUX AND RICHARD MERUELO IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 13, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On April 13, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 13, 2010, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

<u>Via Personal Delivery</u>
The Hon. Kathleen Thompson, U.S. Bankruptcy Court, 21041 Burbank Blvd., Suite 305, Woodland Hills, CA 91367
U.S. Trustee, Jennifer Braun, 21051 Warner Center Lane, #115, Woodland Hills, CA  91367

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 13, 2010 | Cindy M. Cripe | *Cindy Cripe* |
|---|---|---|
| Date | Type Name | Signature |

348920.06A [XP]

25293