1  JOHN J. BINGHAM, JR. (State Bar No. 075842)
   *JBingham@DGDK.com*
2  JULIA W. BRAND (State Bar No. 121760)
   *JBrand@DGDK.com*
3  ENID M. COLSON (State Bar No. 189912)
   *EColson@DGDK.com*
4  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   2029 Century Park East, Third Floor
5  Los Angeles, California 90067-2904
   Telephone: (310) 277-0077
6  Facsimile: (310) 277-5735

7  Attorneys for Debtors and Debtors-in-Possession,
   Meruelo Maddux-845 S. Flower Street, LLC, Meruelo
8  Chinatown, LLC, Meruelo Maddux Properties, Inc. and
   MMP Ventures, LLC

9
                    **UNITED STATES BANKRUPTCY COURT**

10
                    **CENTRAL DISTRICT OF CALIFORNIA**

11
                    **SAN FERNANDO VALLEY DIVISION**

12

13 | In re                              | )  | Case No. 1:09-bk-21621-KT
                                        | )  |
14 | MERUELO MADDUX - 845 S.            | )  | Chapter 11
   | FLOWER STREET, LLC,                | )  |
15 |                                    | )  | **DEBTORS' NOTICE OF MOTION AND**
   |           Debtor and Debtor-in-    | )  | **MOTION FOR APPROVAL OF**
16 |           Possession.              | )  | **SETTLEMENT WITH CANPARTNERS**
   |                                    | )  | **REALTY HOLDING COMPANY IV LLC;**
17 |                                    | )  | **MEMORANDUM OF POINTS AND**
   |                                    | )  | **AUTHORITIES AND DECLARATION OF**
18 |                                    | )  | **JOHN CHARLES MADDUX AND REQUEST**
   |                                    | )  | **FOR JUDICIAL NOTICE IN SUPPORT**
19 |                                    | )  | **THEREOF**
   |                                    | )  |
20 |                                    | )  | [Application for order shortening time filed
   |                                    | )  | concurrently herewith]
21 |                                    | )  |
   |                                    | )  | *Proposed Date and Time:*
22 |                                    | )  | Date: April 19, 2010
   |                                    | )  | Time: 9:30 a.m.
23 |                                    | )  | Ctrm: "301"
   |                                    | )  | 21041 Burbank Blvd.
24 |                                    | )  | Woodland Hills, CA 91367
   | In re                              | )  |
25 |                                    | )  |
   | MERUELO CHINATOWN, LLC,            | )  | Case No.1:09-bk-21622-KT
26 |                                    | )  |
   |           Debtor and Debtor-in-    | )  | Chapter 11
27 |           Possession.              | )  |
   |                                    | )  |
28 |                                    | )  |

352095.03 [XP]                                                              25293

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF FACTS ................................................................................................7

    A.    BANKRUPTCY BACKGROUND .......................................................................7

    B.    BRIEF DESCRIPTION OF THE AFFECTED DEBTORS'
        BUSINESS AND PROPERTY .............................................................................7

        1.    MERUELO MADDUX 845 S. FLOWER, LLC ...........................................8

        2.    MERUELO CHINATOWN, LLC .................................................................9

        3.    MERUELO MADDUX VENTURES, LLC ..................................................10

        4.    MERUELO MADDUX PROPERTIES, INC. ..............................................10

    C.    CANYON'S RELIEF FROM STAY MOTION .....................................................10

    D.    THE CHINATOWN ADVERSARY PROCEEDING ...........................................11

    E.    THE PENDING SALE OF THE PROJECT ..........................................................11

    F.    THE DEBTORS' PROPOSED SETTLEMENT WITH CANYON .....................12

II.    LEGAL ARGUMENT .....................................................................................................15

    A.    THE COURT IS AUTHORIZED TO APPROVE THE
        SETTLEMENT AGREEMENT ...........................................................................15

    B.    THE PROPOSED SETTLEMENT IS REASONABLE AND IN THE
        BEST INTEREST OF THE DEBTORS' ESTATES ...........................................17

III.    CONCLUSION ................................................................................................................19

352095.03 [XP]    25293

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854, 107 S. Ct. 189 (1986).................................................................................... 16

*In re Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984) (*quoting In re W. T. Grant & Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (emphasis added), *cert. denied*, 464 U.S. 822, 104 S. Ct. 89 (1983)), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985)).............................................................................................................. 16

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163 (1968) ................................... 15

*United States v. Alaska National Bank* (*In re Walsh Construction, Inc.*), 669 F.2d 1325, 1328 (9th Cir. 1982) ...................................................................................... 16

**Statutes**

11 U.S.C. § 1107........................................................................................... 4, 7, 26

11 U.S.C. § 1108........................................................................................... 4, 7, 26

28 U.S.C. § 157................................................................................................... 15

28 U.S.C. § 1334................................................................................................. 15

**Rules**

Fed. R. Bankr. P. 9019......................................................................................... 15

Fed. R. Bankr. P. 9019(a) ................................................................................... 15

352095.03 [XP]     25293

1   In re                                         )
2   MERUELO MADDUX PROPERTIES            )   Case No. 1:09-bk-13356-KT
    INC. et al. [1]                               )
3                                                 )   Chapter 11
                    Debtor and Debtor-in-         )
4                   Possession.                   )
                                                  )
5   _____                )
                                                  )
6   ☐   Affects all Jointly Administered          )
        Debtors                                   )
7   ☒   Affects the following Debtor(s):          )
                                                  )
8   Meruelo Maddux Properties, Inc.               )
    (1:09-bk-13356-KT)                            )
9   MMP Ventures, LLC                             )
    (1:09-bk-13392-KT)                            )
10                                                )
    _____                )
11

12  **TO THE HONORABLE KATHLEEN THOMPSON, UNITED STATES BANKRUPTCY**

13  **JUDGE, CANPARTNERS REALTY HOLDING COMPANY IV, LLC, THE TWENTY**

14  **LARGEST UNSECURED CREDITORS OF 845 S. FLOWER AND CHINATOWN, THE**

15  **OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN THE MMPI CASES AND**

16  **THE UNITED STATES TRUSTEE:**

17          Meruelo Maddux - 845 S. Flower Street, LLC ("845 Flower"), Meruelo Chinatown, LLC

18  ("Chinatown"), Meruelo Maddux Properties, Inc., ("MMPI") and MMP Ventures, LLC ("MMP

19  Ventures") (collectively, the "Debtors")[2] will and hereby do move for an order:

20          (1)     approving the proposed settlement agreement (the "Settlement Agreement")

21                  between the Debtors and Canpartners Realty Holding Company IV LLC ("Canyon")

22  [1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated
    entities. The affiliated case numbers are as follows: 1:09-bk-13338-KT; 1:09-bk-13358-KT; 1:09-bk-13359-KT; 1:09-
23  bk-13360-KT; 1:09-bk-13361-KT; 1:09-bk-13362-KT; 1:09-bk-13363-KT; 1:09-bk-13364-KT; 1:09-bk-13365-KT;
    1:09-bk-13366-KT; 1:09-bk-13367-KT; 1:09-bk-13368-KT; 1:09-bk-13369-KT; 1:09-bk-13370-KT; 1:09-bk-13371-
24  KT; 1:09-bk-13372-KT; 1:09-bk-13373-KT; 1:09-bk-13374-KT; 1:09-bk-13375-KT; 1:09-bk-13376-KT; 1:09-bk-
    13377-KT; 1:09-bk-13378-KT; 1:09-bk-13379-KT; 1:09-bk-13380-KT; 1:09-bk-13381-KT; 1:09-bk-13382-KT; 1:09-
    bk-13383-KT; 1:09-bk-13384-KT; 1:09-bk-13385-KT; 1:09-bk-13386-KT; 1:09-bk-13387-KT; 1:09-bk-13388-KT;
25  1:09-bk-13389-KT; 1:09-bk-13390-KT; 1:09-bk-13391-KT; 1:09-bk-13392-KT; 1:09-bk-13393-KT; 1:09-bk-13394-
    KT; 1:09-bk-13395-KT; 1:09-bk-13396-KT; 1:09-bk-13397-KT; 1:09-bk-13398-KT; 1:09-bk-13399-KT; 1:09-bk-
    13400-KT; 1:09-bk-13401-KT; 1:09-bk-13402-KT; 1:09-bk-13403-KT; 1:09-bk-13404-KT; 1:09-bk-13405-KT; 1:09-
26  bk-13406-KT; 1:09-bk-13407-KT; 1:09-bk-13434-KT; and 1:09-bk-13439-KT.

27  [2]    Identical motions are being filed the bankruptcy cases of 845 S. Flower, Chinatown and the
    jointly administered MMPI bankruptcy case with respect to MMPI and MMP Ventures.
28

352095.03 [XP]                                                              25293

1   (a copy of which is attached as Exhibit 1 to the Declaration of John Charles

2   Maddux);

3   (2)   authorizing 845 Flower to make payments to Canyon under the Settlement

4   Agreement, as explained in detail below; and

5   (3)   authorizing the Debtors to execute and deliver such additional documents and

6   perform the terms as are contemplated under the Settlement Agreement.

7   This Motion is made on the following grounds:  Prior to September 3, 2009 (the "Flower

8   Petition Date"), and on or about July 31, 2008, 845 Flower executed a promissory note (the

9   "Note") in the original principal amount of $84,000,000 in favor of Canyon in connection with a

10  Loan Agreement dated as of July 31, 2008 (the "Loan Agreement") pursuant to which Canyon

11  made a construction loan of $84,000,000 to 845 Flower (the "Loan").  845 Flower's obligations

12  under the Note were secured by a construction deed of trust (the "845 Flower Deed of Trust") in

13  favor of Canyon against 845 Flower's 34-story luxury residential condominium tower located at

14  705 W. 9th Street in the Southpark area of Los Angeles (the "Project").  845 Flower also granted

15  Canyon a security interest in various deposit accounts of 845 Flower (the "Accounts Pledge").  In

16  addition, Chinatown granted Canyon a deed of trust (the "Chinatown Deed of Trust") against

17  Chinatown's real property located at 129 West College Street, Los Angeles, California (the

18  "Chinatown Property").  Meruelo Maddux Properties, Inc., ("MMPI") executed both completion

19  and repayment guaranties in favor of Canyon (the "MMPI Guaranties") and MMP Ventures

20  pledged its membership interests in 845 Flower and Chinatown to Canyon (the "Pledge

21  Agreements")[3].

22  MMPI and MMP Ventures filed voluntary petitions for relief under Chapter 11 of Title 11

23  of the United States Code with the United States Bankruptcy Court for the Central District of

24  California (the "Bankruptcy Court") on March 27, 2009.  The bankruptcy cases of MMPI and

25

---

26  [3]   The Loan Agreement, the Note, the Deed of Trust, the Accounts Pledge, the MMPI
Guaranties, the Chinatown Deed of Trust, the Pledge Agreements and all other documents and
27  instruments evidencing or securing the Loan, are referred to collectively herein as the "Loan
Documents."

28

352095.03 [XP]                                                                                              25293

1 MMP Ventures are being jointly administered with Chapter 11 cases filed by 52 affiliated debtors

2 and debtors-in-possession (collectively, the "MMPI Debtors") under the lead case, *In re Meruelo*

3 *Maddux Properties, Inc.*, case number 1:09-bk-13356-KT. Since the filing of their petitions for

4 relief, the MMPI Debtors have and are continuing to operate their business as debtors-in-possession

5 under 11 U.S.C. §§ 1107 and 1108.

6      On September 3, 2009, 845 Flower and Chinatown filed voluntary petitions for relief under

7 Chapter 11 of Title 11 of the United States Code with the Bankruptcy Court. The bankruptcy

8 cases of 845 Flower and Chinatown are not being jointly administered with Chapter 11 cases of

9 the MMPI Debtors. Since the filing of their petitions for relief, 845 Flower and Chinatown have

10 and are continuing to operate their businesses as debtors-in-possession under 11 U.S.C. §§ 1107

11 and 1108.

12      Subject to Court approval, the Debtors and Canyon have agreed to a settlement of all

13 disputes arising out of or relating to the Loan Documents, the RFS Motion, the Chinatown

14 Adversary Proceeding and the treatment of all of Canyon's claims in the Chapter 11 cases of 845

15 Flower, Chinatown and MMPI (the "Settlement"). The Settlement is memorialized in a written

16 settlement agreement attached as Exhibit "1" to the Declaration of John Charles Maddux (the

17 "Maddux Decl."). As described in greater detail in the attached Memorandum, the proposed

18 settlement provides for [1] payment of an agreed amount (the "Settlement Amount") to Canyon on

19 account of its Claim in the amount set forth in the Settlement Agreement in full satisfaction of the

20 claims of Canyon against all of the Debtors; [2] upon payment the release of Canyon's liens on and

21 interests in the assets of 845 Flower, Chinatown, and MMP Ventures, [3] the resolution of the

22 Chinatown Adversary Proceeding and Canyon's motion for relief from stay in the Flower Case.

23 845 Flower proposes to fund its payment obligations under the proposed settlement from the

24 proceeds of the proposed sale of the Project, which is the subject of a separate concurrently filed

25 motion. The Settlement Agreement provides for payment of the fixed amount of $86,521,389 in

26 satisfaction of Canyon's liens and claims provided such payment is made by April 30, 2010. If

27 payment is made thereafter, the Debtor will be required to pay a per diem interest sum to Canyon in

28 addition to the $86,521,389. Further, the Settlement Agreement provides additional rights and

4

1  remedies to Canyon in the event the Settlement Amount is not paid by May 10, 2010, all as more

2  fully set forth in the Settlement Agreement, including granting it relief from stay. The Debtors

3  believe the Settlement is fair, reasonable and in the best interests of their estates. The Debtors

4  therefore request that the Court approve the Settlement and authorize the use of certain of the

5  proceeds from the Flower Sale to permit 845 Flower to perform its payment and other obligations

6  under the Settlement.

7       On April 13, 2010, 845 Flower filed its *Motion for Order Authorizing the Sale of Real*

8  *Property Free and Clear of Liens* (the "Sale Motion,") by which 845 Flower seeks authority to sell

9  the Project to a buyer for a purchase price of $110,000,000 (less certain purchase price adjustments

10  of $500,000) (the "Flower Sale"). All contingencies have been satisfied or waived and all

11  conditions to closing have either been satisfied or waived other than obtaining an order of the

12  Bankruptcy Court approving the sale and other standard closing conditions (such as performance

13  by the seller at closing). The buyer is required to close the Flower Sale no later than five business

14  days after entry of an order of the Bankruptcy Court approving the Flower Sale, which order is not

15  subject to a stay of enforcement. 845 Flower has requested that the Court set a hearing on

16  shortened notice on the Sale Motion for April 19, 2010.

17       This Motion is based upon this Notice and Motion, the Memorandum of Points and

18  Authorities, the Declaration of John C. Maddux and Request for Judicial Notice, the papers and

19  pleadings on file in this case, and such other evidence as may be presented to the Court.

20       **PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held on **April**

21  **19, 2010 at 9:30 a.m.** before the Honorable Kathleen Thompson, in Courtroom 301 of this Court.

22  Any party opposing the relief sought by the Motion must file a response in writing with the Clerk

23  of the Court and such response must be filed and served upon the following by **5:00 p.m. on April**

24  **16, 2010**: (1) the Office of the United States Trustee, ATTN: Jennifer L. Braun, Esq., 21051

25  Warner Center Lane, Suite 115, Woodland Hills, CA 91367; (2) counsel for the Debtors, Julia W.

26  Brand, Esq., Danning, Gill, Diamond & Kollitz, LLP, 2029 Century Park East, Third Floor, Los

27  Angeles, CA 90067; and (3) counsel for Canyon, Lance N. Jurich, Esq., Loeb & Loeb LLP,

28

352095.03 [XP]                                                                                          25293

1 | 101000 Santa Monica Blvd., Suite 2200, Los Angeles, CA 90067.  If you do not have any objection

2 | to the Motion, you do not need to take any further action.

3

4 | Dated: April 13, 2010

Respectfully submitted,

5

DANNING, GILL, DIAMOND & KOLLITZ, LLP

6

7 | By: *Julia W Brand*

8 | Julia W. Brand
Attorneys for Debtor and Debtor-in-

9 | Possession, Meruelo Maddux - 845 S.
Flower Street, LLC, Meruelo Chinatown,

10 | LLC, Meruelo Maddux Properties, Inc.
and Meruelo Maddux Properties Ventures,
LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

352095.03 [XP]                                                                                          25293

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

A.   BANKRUPTCY BACKGROUND

   MMPI and MMP Ventures filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") on March 27, 2009.   The bankruptcy cases of MMPI and MMP Ventures are being jointly administered with Chapter 11 cases filed by 52 affiliated debtors and debtors-in-possession (collectively, the "MMPI Debtors") under the lead case, *In re Meruelo Maddux Properties, Inc.,* case number 1:09-bk-13356-KT.  Since the filing of their petitions for relief, the MMPI Debtors have and are continuing to operate their business as debtors-in-possession under 11 U.S.C. §§ 1107 and 1108.

   On September 3, 2009, 845 Flower and Chinatown filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code with the Bankruptcy Court.   The bankruptcy cases of 845 Flower and Chinatown are not being jointly administered with Chapter 11 cases of the MMPI Debtors.  Since the filing of their petitions for relief, 845 Flower and Chinatown have and are continuing to operate their business as debtors-in-possession under 11 U.S.C. §§ 1107 and 1108.

B.   BRIEF DESCRIPTION OF THE AFFECTED DEBTORS' BUSINESS AND PROPERTY

   MMPI, together with Meruelo Maddux Properties, LP ("MMPLP") and its affiliates, including 845 Flower and Chinatown and certain other related entities (sometimes collectively referred to herein as the "Company") develops, redevelops and owns industrial, commercial and multi-unit residential properties in downtown Los Angeles and other urban markets in southern California.  The vast majority of the properties are situated in downtown Los Angeles.  The Company is believed to be the largest non-governmental land owner in downtown Los Angeles, owning or controlling approximately 80 acres of land in downtown Los Angeles at the time MMPI was formed in 2006.

352095.03 [XP]                                                                        25293

### 1.    MERUELO MADDUX 845 S. FLOWER, LLC

845 S. Flower owns the Project, a 34-story residential condominium tower in the Southpark region of downtown Los Angeles. The building is comprised of 214 luxury residential units totaling approximately 254,300 square feet and an approximately 6,800 square foot commercial unit on the ground floor. This building is a first class iconic structure in downtown Los Angeles. Viewed from the street, this curtain wall building is clad with various shades of green glass and has numerous distinctive and attractive architectural features which include external balconies on all four corners of the building, a seventh floor amenity deck with a landscaped garden area and a premium extended balcony and viewing deck located on the ninth floor.

The Project has an attractive location at the corner of Ninth and Flower Streets, which is (a) across the street from the newly opened Ralphs supermarket, (b) a few blocks away from the LA Live complex and the Staples Center, (c) on an all residential corner and (d) closer than most other Southpark residences to the office core of downtown Los Angeles. The building has resident amenities that start at street level which include (a) a valet entrance area adjacent to the lobby on Ninth Street, (b) two gated entrances that lead to above ground parking providing in excess of one parking space for each one bedroom residence and two parking spaces for each two bedroom residence, and (c) an efficient loading dock area for resident move-ins. The building's residences are located on the twenty-eight residential floors that start on floor 7 and culminate with the four penthouse units on floor 35.

The Project is capitalized by approximately $73 million of funds advanced by 845 Flower and an $84 million construction loan from Canyon (the "Loan") memorialized by a Loan Agreement dated July 31, 2008 (the "Loan Agreement"). On that same date, 845 Flower executed a promissory note (the "Note") in the original principal amount of $84,000,000 in favor of Canyon. 845 Flower's obligations under the Note were secured by a construction deed of trust (the "Flower Deed of Trust") in favor of Canyon against the Project. 845 Flower also granted Canyon a security interest in various deposit accounts of 845 Flower (the "Accounts Pledge"). As described below, Chinatown and MMP Ventures also pledged assets in connection with Canyon's Loan to 845 Flower.

On September 15, 2009, 845 Flower filed an emergency motion for authority to use cash collateral. By its order entered October 23, 2009, the Bankruptcy Court authorized 845 Flower to use the cash collateral of Canyon on a final basis to pay the costs and expenses of construction of 845 Flower's Project and to pay the first and second installment of 845 Flower's 2009-2010 real property taxes.

On February 17, 2010, 845 Flower and Chinatown filed their *Joint First Amended Disclosure Statement and Joint First Amended Plan of Reorganization* (the "First Amended Disclosure Statement and Plan," *Flower docket no.* 188; *Chinatown docket no.* 76). A disclosure statement hearing on the adequacy of the disclosure in the First Amended Disclosure Statement and Plan is set for April 28, 2010.

Canyon filed its secured proof of claim against 845 Flower in the Flower case for "not less than $84,000,000" based on the Loan Documents (*Flower proof of claim no.* 8).

### 2.   MERUELO CHINATOWN, LLC

Chinatown owns approximately 5.5 acres of unimproved land at 129 West College Street in downtown Los Angeles ("Chinatown Property"). The Chinatown Property has significant development potential and the current development plan for the property is for a mixed residential and retail use.

In connection with the Loan from Canyon to 845 Flower, Chinatown granted Canyon a deed of trust (the "Chinatown Deed of Trust") against the Chinatown Property. Canyon filed its proof of claim against Chinatown in the Chinatown case for "not less than $84,000,000" based on the Loan Documents, including but not limited to the Chinatown Deed of Trust (*Chinatown proof of claim no.* 2). Other than the Chinatown Deed of Trust, the Chinatown Property is unencumbered. The Chinatown Property was appraised at $17,600,000 as of March 2008 based upon about $80 per land square foot.

352095.03 [XP]

25293

### 3.    MERUELO MADDUX VENTURES, LLC

MMPI is the sole general partner of, and holds a 99.6% ownership interest in, MMPLP. MMPLP owns 100% of the membership units in MMP Ventures. MMP Ventures, in turn, owns 100% of the stock or membership units in a number of subsidiary corporations and limited liability companies, including 845 Flower and Chinatown, referred to as the "property-level entities" because they are the entities which hold title to the various real properties and real estate projects developed and operated by MMPI through MMPLP. In connection with the Loan from Canyon to 845 Flower, MMP Ventures pledged its membership interests in 845 Flower and Chinatown to Canyon (the "845 Flower Pledge Agreement," the "Chinatown Pledge Agreement" and, collectively, the "Pledge Agreements").

### 4.    MERUELO MADDUX PROPERTIES, INC.

As described above, MMPI is the ultimate parent company of 845 Flower, Chinatown, MMP Ventures as well as the other 52 MMPI Debtors. MMPI does not separately own any real property but is a guarantor of many of the other Debtors' obligations to secured creditors.

In connection with the Loan from Canyon to 845 Flower, MMPI executed both completion and repayment guaranties in favor of Canyon (the "MMPI Guaranties")[4]. On September 22, 2009, Canyon filed its unsecured proof of claim against MMPI in the MMPI case for "not less than $84,000,000" based on the MMPI Guaranties (*MMPI proof of claim no.* 41).

C.    CANYON'S RELIEF FROM STAY MOTION

On November 12, 2009, Canyon filed its Motion for Relief from the Automatic Stay (the "RFS Motion") in the 845 Flower case seeking relief from the automatic stay to permit it to foreclose on its Flower Deed of Trust against the Project (*Flower docket no.* 86). Canyon asserts

---

[4]    The Loan Agreement, the Note, the Deed of Trust, the Accounts Pledge, the MMPI Guaranties, the Chinatown Deed of Trust, the Pledge Agreements and all other documents and instruments evidencing or securing the Loan, are referred to collectively herein as the "Loan Documents."

1   that it is entitled to relief from the stay because the Debtor does not have any equity in the Project

2   and according to Canyon, the Debtor cannot cram down a plan on Canyon over its objection.  845

3   Flower vigorously disputes each of Canyon's contentions.

4        The initial hearing on the RFS Motion was held on January 8, 2010.  After additional

5   briefing and a further hearing on February 5, 2010, the Court continued the RFS Motion to March

6   12, 2010 for an evidentiary hearing regarding the value of the Project and testimony by the

7   appraisers retained by Canyon and 845 Flower.  That evidentiary hearing has been continued to

8   April 28, 2010.

9

10   D.    THE CHINATOWN ADVERSARY PROCEEDING

11        On October 19, 2009, Canyon filed an adversary proceeding against 845 Flower and

12   Chinatown in their respective cases, asserting and seeking a declaration, among other things, that

13   Canyon was not required to release its lien on the Chinatown Property or its security interest in

14   MMP Ventures' membership interests in Chinatown (the "Chinatown Adversary Proceeding,"

15   *Flower docket no.* 70; *Chinatown docket no.* 42).  845 Flower and Chinatown answered and

16   counterclaimed, contending, among other things, that Canyon is required to release its liens on the

17   Chinatown Property and its security interest in the MMP Ventures membership interests in

18   Chinatown.  On November 19, 2009, the Bankruptcy Court entered its Order approving the parties'

19   stipulation to consolidate the two adversary proceedings, deeming the complaint filed in 845

20   Flower's case (1:09-ap-01435-KT) as the sole operative complaint.

21        On February 16, 2010 the parties filed cross-motions for summary judgment (*Chinatown*

22   *Adversary Proceeding docket nos.* 13 – 19) which were initially set for hearing on March 12, 2010.

23   Those hearings have been continued several times and are currently set for hearing on April 28,

24   2010.

25

26   E.    THE PENDING SALE OF THE PROJECT

27        On April 13, 2010, 845 S. Flower filed its *Motion for Order Authorizing The Sale of Real*

28   *Property Free and Clear of Liens* (the "Sale Motion,") by which 845 Flower seeks authority to sell

11

1  the Project to Watermarke Properties, Inc., a California corporation, or its assignee (the "Buyer")

2  for a purchase price of $110,000,000 (less certain purchase price reductions of $500,000) (the

3  "Flower Sale")[5]. The Buyer is a privately owned real estate investment company that acquires,

4  develops and operates a diverse portfolio of apartments, retail, office and industrial properties. The

5  Buyer has provided a $5,000,000 deposit in escrow, which deposit is now non-refundable, provided

6  the remaining conditions to closing are satisfied.

7      All contingencies have been satisfied or waived and all conditions to closing have either

8  been satisfied or waived other than obtaining an order of the Bankruptcy Court approving the sale

9  and other standard closing conditions (such as performance by the seller at closing).  845 Flower

10  has asked the Court to set a hearing on shortened notice on the Sale Motion for April 19, 2010.

11  Pursuant to the settlement, Canyon has agreed to accept the Settlement Amount[6] from escrow at

12  closing in satisfaction of its Lien and has agreed to the release of its Lien on the Project, all other

13  845 Flower collateral and on the assets of Chinatown and MMP Ventures.   Subject to Bankruptcy

14  Court approval, 845 Flower will pay such amount to Canyon at the closing of the Flower Sale

15  though escrow from the proceeds of the sale.

16

17  F.      THE DEBTORS' PROPOSED SETTLEMENT WITH CANYON

18      Subject to Court approval, the Debtors and Canyon have agreed to settle any disputes

19  arising out of or relating to Canyon's claims against the Debtors or arising out of or related to the

20  Loan Documents, the RFS Motion, and the Chinatown Adversary Proceeding (the "Settlement").

21  The Settlement is memorialized in the written settlement agreement (the "Settlement Agreement")

22  attached as Exhibit "1" to the Maddux Declaration.  Without limiting the detail in that Agreement,

23  the essential terms of the proposed Settlement are as follows:

24  ──────────────

25  [5]      There is a $500,000 purchase price credit in consideration of 845 Flower not having to
purchase or install window coverings.

26

27  [6]      The Settlement Amount is $86,521,389 if paid by April 30, 2010.  If the Settlement Amount is
paid after April 30, 2010, the Debtor will also be required to pay per diem interest in the amounts
set forth in the Settlement Agreement from after April 30, 2010 until the payment date.

28

352095.03 [XP]                                                                25293

1.    On or before May 10, 2010, 845 Flower shall pay to Canyon the Settlement Amount and Canyon shall accept the Settlement Amount in full satisfaction of its claims.

2.    At the closing of the Flower Sale, 845 Flower shall establish a segregated account to hold funds for payment of the unpaid or disputed Mechanics' Lien Claims and unsecured claims against the 845 Flower's estate (the "Remaining Claims") as provided in the Canyon Settlement Agreement (the "Remaining Claims Fund").  At closing, the Remaining Claims Fund shall be funded in an amount not to exceed $10,313,477, comprised of $8,735,898 representing the maximum amount of all unpaid or disputed Mechanics Lien Claims (which amount shall be reduced by any Mechanics' Lien Claims paid after entry of this order but prior to closing of the sale), $100,000 for payment of unsecured claims, and $1,500,000 as provided in the Canyon Settlement Agreement.  The Remaining Claims Fund shall be funded with the remaining funds from 845 Flower's construction reserve accounts plus proceeds of the Sale sufficient to fully fund the account. The Liens of all creditors of 845 Flower asserting Liens against the Project, including but not limited to Canyon (pursuant to the Canyon Settlement Agreement) and the Mechanics Lien Creditors, shall attach to the Remaining Claims Fund.  The Canyon Settlement Agreement also provides for the payment of Canyon's third party fees and expenses arising out of the Remaining Claims from the Remaining Claims Fund.

3.    The Settlement Amount shall be paid to Canyon out of escrow at the closing of the Flower Sale.

4.    Upon receipt of the Settlement Amount, all of Canyon's liens, rights and interest in and to any of the Debtors' assets shall be fully released, reconveyed, terminated and discharged, including, without limitation, full reconveyances of the Flower Deed of Trust, the Chinatown Deed of Trust, terminations of any UCC financing statements and account control agreements, releases of any guaranties, assignments and pledges, including MMP Ventures' membership interests in 845 Flower and Chinatown, the MMPI Guaranties and the Accounts Pledge and Pledge Agreements.

5.    Upon payment of the Settlement Amount, 845 Flower, Chinatown, MMP Ventures and MMPI release Canyon from any and all claims which they have against Canyon as of

13

1  the date of the payment of the Settlement Amount.  The releases by MMPI and MMP Ventures are

2  the only obligations of MMPI and MMP Ventures under the Settlement.

3    6.    845 Flower and Chinatown shall not proceed with the April 28, 2010

4  hearing to approve the disclosures contained within the First Amended Disclosure Statement and

5  Plan but shall have the right to modify or amend their Plan and proceed to confirmation provided

6  that any such plan does not in any way seek to alter, modify or contradict the terms of the

7  Settlement or Canyon's rights under the Settlement.

8    7.    If 845 Flower fails to pay the Settlement Amount on or before May 10, 2010,

9  then on May 11, 2010 Canyon and 845 Flower shall submit a joint relief from stay stipulation in

10  the Flower case requesting an order (the "Relief Order") granting Canyon immediate relief from

11  the automatic stay in the Flower case. Then, from and after May 11, 2010  (i) Canyon shall have

12  the right to enforce all of its rights and remedies under the 845 Flower Deed of Trust, the other

13  Loan Documents  and applicable law with respect to the Project in reliance upon the Relief Order;

14  provided, however, Canyon shall not exercise its rights under the Chinatown Deed of Trust or the

15  Chinatown Pledge Agreement (which shall be governed by the Chinatown Adversary Proceeding)

16  and, (ii) no sale (including, but not limited to a UCC sale) or other realization on or dispossession

17  of  any collateral under any of the Loan Documents shall occur prior to August 31, 2010, provided,

18  thereafter, Canyon shall have the absolute right to pursue all of its rights and remedies under the

19  Loan Documents except with respect to the Chinatown Pledge Agreement and the Chinatown Deed

20  of Trust which shall be governed by the Chinatown Adversary Proceeding, (iii) interest shall accrue

21  at the Default Rate (as defined in the Loan Documents) on the Total Debt Amount, from and after

22  April 30, 2010, and (iv) Canyon shall continue to incur costs and expenses (including, but not

23  limited to, attorneys' fees and expenses).  Each party reserves its right to assert and pursue the

24  claims and counterclaims raised and asserted by each such Party in the Chinatown Adversary

25  Proceeding, provided 845 Flower's and Chinatown's challenge to the validity and amount of

26  Canyon's claim against 845  Flower, which shall be set at the Total Debt Amount, as defined in the

27  Canyon Settlement Agreement, as of April 30, 2010, shall be waived.  No monetary relief may be

28  obtained against Canyon in the Chinatown Adversary Proceeding which would serve to provide

14

1  845 Flower or Chinatown with a monetary judgment (including, but not limited to, attorneys' fees

2  and expenses) against Canyon that could be applied to reduce the Total Debt Amount or alter the

3  Total Debt Amount in any way.  845 Flower and Chinatown may retain and pursue all of their

4  claims and allegations for the release of the Chinatown Deed of Trust and Chinatown Pledge

5  Agreement, and Canyon may retain and pursue any of its claims and defenses related to the

6  Chinatown Deed of Trust and Chinatown Pledge Agreement.

7  ## II.

8  ## **LEGAL ARGUMENT**

9  A.    THE COURT IS AUTHORIZED TO APPROVE THE SETTLEMENT AGREEMENT

10        This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, and

11  Federal Rule of Bankruptcy Procedure 9019.  Federal Rule of Bankruptcy Procedure 9019(a)

12  provides,

13              On motion by the trustee and after a hearing on notice to creditors,
              the debtor . . . and to such other entities as the court may designate,
14              the court may approve a compromise or settlement.

15        The Supreme Court, in *Protective Committee for Independent Stockholders of TMT Trailer*

16  *Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163 (1968), held that a bankruptcy

17  court, in considering whether to approve a compromise, should inform itself regarding

18              all facts necessary for an intelligent and objective opinion of the
              probabilities of ultimate success should the claim be litigated.
19              Further, the judge should form an educated estimate of the
              complexity, expense, and likely duration of such litigation, the
20              possible difficulties of collecting on any judgment which might be
              obtained, and all other factors relevant to a full and fair assessment of
21              the wisdom of the proposed compromise.

22  *Id.*
        The Ninth Circuit has clarified the inquiry as follows:
23

24              In determining the fairness, reasonableness and adequacy of a
              proposed settlement agreement, the court must consider:  (a)
              probability of success in the litigation; (b) the difficulties, if any, to
25              be encountered in the matter of collection; (c) the complexity of the
              litigation involved, and the expense, inconvenience and delay
26              necessarily attending it; [and] (d) the paramount interest of the
              creditors and a proper deference to their reasonable views in the
27              premises.

28

15

352095.03 [XP]                                                          25293

1   *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854, 107 S. Ct.

2   189 (1986).

3       A trustee or debtor-in-possession has the burden of persuading the Court that the

4   compromise is fair and equitable and should be approved. *Id.* Although "the creditors' objections

5   to a compromise must be afforded due deference, such objections are not controlling, and while the

6   court must preserve the rights of the creditors, it must also weigh certain factors to determine

7   whether the compromise is in the best interest of the bankrupt estate." *Id.* at 1382 (citations

8   omitted).

9       The bankruptcy court has wide latitude and discretion in evaluating a proposed compromise

10   because the judge is "uniquely situated to consider the equities and reasonableness." *United States*

11   *v. Alaska National Bank (In re Walsh Construction, Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982).

12   The Ninth Circuit has further stated:

13         A compromise agreement allows the trustee and the creditor to avoid
        the expenses and burdens associated with litigating "sharply
14        contested and dubious" claims. [Citation]. The bankruptcy court
        need not conduct an exhaustive investigation into the validity of the
15        asserted claim. [Citation]. It is sufficient that, after apprising itself of
        all facts necessary for an intelligent and objective opinion concerning
16        the claim's validity, the court determines that either (1) the claim has
        a "substantial foundation" and is not "clearly invalid as a matter of
17        law," or (2) the outcome of the claim's litigation is "doubtful."

18   *Id.* at 1328. The court is not "to decide the numerous questions of law and fact raised by

19   [objectors] but rather to canvass the issues and see whether the settlement '*falls below the lowest*

20   *point in the range of reasonableness.*'" *In re Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr.

21   S.D.N.Y. 1984) (*quoting In re W. T. Grant & Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (emphasis

22   added), *cert. denied*, 464 U.S. 822, 104 S. Ct. 89 (1983)), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985).

23

24   B.     <u>THE PROPOSED SETTLEMENT IS REASONABLE AND IN THE BEST INTEREST</u>

25        <u>OF THE DEBTORS' ESTATES</u>

26       The Debtors' proposed Settlement with Canyon is a fair and reasonable settlement of issues

27   that have arisen in the 845 Flower and Chinatown Chapter 11 Cases, including any defaults under

28   the Loan, the RFS Motion and the Chinatown Adversary Proceeding and that may arise in the

1 future in the MMPI case relating to the MMPI Guaranties or in the MMP Ventures case relating to

2 the Pledge Agreements.

3      There is no dispute that Canyon is the largest secured creditor of 845 Flower with a Deed of

4 Trust and an Accounts Pledge, among other things, to secure repayment of the Loan. 845 Flower

5 and Canyon have already engaged in extensive litigation related to 845 Flower's motion to sell

6 individual condominium units and Canyon's RFS Motion. The RFS motion remains pending with

7 a day-long evidentiary hearing currently scheduled for April 28, 2010. In the extensive briefing

8 related to Canyon's RFS Motion, Canyon asserted that 845 Flower could not confirm a cram down

9 plan over Canyon's objection and indicated it would object and seek to prevent confirmation of the

10 First Amended Plan proposed by 845 Flower and Chinatown. Although 845 Flower disputes

11 Canyon's assertions, and believes it could confirm a plan without Canyon's support, it is

12 undisputed that a heavily contested cram down confirmation will be expensive and time consuming

13 and 845 Flower acknowledges there is always a risk in any litigation. Equally important, the

14 Settlement fixes the amount of Canyon's debt as of April 30, 2010 in an amount substantially less

15 than asserted by Canyon and the payment of the Settlement Amount ensures that 845 Flower and

16 its estate will no longer bear the potentially heavy burden of default interest accruing on the Loan

17 at a rate in excess of $1,000,000 per month.

18      While 845 Flower and Chinatown remain confident of their defenses and counterclaims in

19 the Chinatown Adversary Proceeding, they also acknowledge the possible risk of loss and the

20 unavoidable complexity, delay and expense of continuing to litigate the Chinatown Adversary

21 Proceeding, including the possibility that the disputed issues in the Chinatown Adversary

22 Proceeding may not be subject to summary judgment and may require an expensive and time

23 consuming bench trial.

24      Confronting these complex and litigious scenarios, and recognizing that an amicable

25 resolution would be the quickest and most cost effective resolution of all of the various disputes

26 with Canyon, the Debtors and Canyon pursued settlement discussions to determine whether a

27 settlement was possible. Prior to and contemporaneous with these settlement discussion, 845

28 Flower negotiated the proposed sale of the Project for $110,000,000. Upon Court approval of the

1    Flower Sale, 845 Flower will have sufficient funds to meet its payment obligations of $86,521,389

2    under the Settlement.

3          The Debtors believe the paramount interest of creditors warrants approval of the Settlement

4    as well.  As described below, the Settlement will allow 845 Flower and Chinatown to rapidly

5    emerge from Chapter 11 with the claims of all creditors paid in full, will reduce the amount of

6    unsecured claims against MMPI by not less than $84,000,000 and will release Canyon's liens on

7    MMP Ventures' membership interests in 845 Flower and Chinatown.  The Flower Sale purchase

8    price is sufficient to not only satisfy 845 Flower's payment obligations under the Settlement but

9    also will satisfy the outstanding secured and unsecured claims in the Flower case.  As a result, the

10   Settlement and payment of the Settlement Amount to Canyon will not jeopardize the recovery by

11   other creditors of 845 Flower and, in fact, will allow 845 Flower to bring its Chapter 11 case to a

12   speedy and successful resolution in which secured and unsecured creditors will be paid in full.

13         Only 845 Flower has a payment obligation under the Settlement.  Nevertheless, the

14   Settlement will result in the withdrawal of Canyon's $84,000,000 guaranty claim against MMPI.  It

15   will also result in the release of Canyon's liens on MMP Ventures' membership interests in

16   Chinatown and 845 Flower and the release of Canyon's liens against the Chinatown Property.

17   Other than the secured claim of Canyon, Chinatown has only a small amount of unsecured debt and

18   therefore the Settlement will allow Chinatown, like 845 Flower, to bring its Chapter 11 case to a

19   speedy and successful resolution in which its creditors are paid in full and it emerges from

20   bankruptcy with the Chinatown Property and its other assets completely unencumbered.

21         In view of the expense and uncertainty associated with the litigation of Canyon's claims,

22   the RFS Motion and the Chinatown Adversary Proceeding and the significant benefits of reaching

23   an agreement with the largest creditor of 845 Flower and Chinatown (and one of the largest

24   creditors of MMPI), the Debtors believe that the proposed Settlement is in the best interests of the

25   Debtors, their estates and their creditors.

26

27

28

352095.03 [XP]

25293

1

## III.

## CONCLUSION

For the foregoing reasons, the Debtors request that the Court grant the Motion, approve the proposed Settlement and authorize the Debtors to perform thereunder including authorizing 845 Flower to pay the Settlement Amount to Canyon from the proceeds of the Flower Sale. The Debtors also request such further relief as the Court deems just and proper.

Dated: April 13 , 2010

Respectfully submitted,

DANNING, GILL, DIAMOND & KOLLITZ, LLP

By:  *Julia W Brand*

Julia W. Brand
Attorneys for Debtor and Debtor-in-
Possession, Meruelo Maddux - 845 S.
Flower Street, LLC, Meruelo Chinatown,
LLC, Meruelo Maddux Properties, Inc.
and Meruelo Maddux Properties Ventures,
LLC

352095.03 [XP]                                              25293

# DECLARATION OF JOHN C. MADDUX

I, John C. Maddux, declare and state as follows:

1.    I am the President and Chief Operating Officer of Meruelo Maddux Properties, Inc., a Delaware corporation ("MMPI").

2.    I have personal knowledge of the facts in this declaration, except as to those matters that are based upon information and belief, which matters I believe to be true.  If called as a witness, I could testify competently to these facts.

3.    MMPI is the parent company of approximately 69 affiliated entities, including MMP Ventures, LLC ("MMP Ventures"), Meruelo Maddux – 845 S. Flower Street, LLC  ("845 Flower") and Meruelo Chinatown, LLC ("Chinatown").  On March 26 and 27, 2009, MMPI, and 53 other of the affiliated entities (collectively the "MMPI Debtors" or the "Company") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  845 Flower and Chinatown each filed a voluntary petition for relief on September 3, 2009.  I am a designated officer of each of the affiliated entities, including 845 Flower, Chinatown, MMPI and MMP Ventures and am authorized to give this declaration.

4.    As a result of my being Chief Operating Officer of MMPI and a designated officer of 845 Flower, Chinatown, and MMP Ventures, and my review of relevant documents, I am familiar with the day-to-day operations of the MMPI Debtors, 845 Flower and Chinatown as well as their business affairs, and their books and records, and generally the manner in which they are prepared.  Except as otherwise noted, all facts set forth in this declaration are based on my personal knowledge, my discussions with other members of MMPI's senior management team, my review of relevant documents, or my opinion, based on, among other things, my experience and knowledge of the operations and financial conditions of 845 Flower, Chinatown, MMPI and MMP Ventures.

5.    I am submitting this Declaration in support of the Debtors' *Motion For Approval Of Settlement With Canpartners Realty Holding Company IV LLC* (the "Settlement Motion").

352095.03 [XP]

20

25293

6.     MMPI, together with Meruelo Maddux Properties, LP ("MMPLP") and its affiliates, including 845 Flower and Chinatown and certain other related entities (the "Company") develops, redevelops and owns industrial, commercial and multi-unit residential properties in downtown Los Angeles and other urban markets in southern California.  The vast majority of the properties are situated in downtown Los Angeles.  The Company is believed to be the largest non-governmental land owner in downtown Los Angeles, owning or controlling approximately 80 acres of land in downtown Los Angeles at the time MMPI was formed in 2006.

7.     845 Flower owns a recently completed 34-story luxury residential building with 214 units and approximately 6,800 square feet of commercial space on the ground floor located at 705 W. 9th Street in the South Park area of Los Angeles (the "Project").  This building is a first class iconic structure in downtown Los Angeles.  Viewed from the street, this curtain wall building is clad with various shades of green glass and has numerous distinctive and attractive architectural features which include external balconies on all four corners of the building, a seventh floor amenity deck with a landscaped garden area and a premium extended balcony and viewing deck located on the ninth floor.

8.     The Project has an attractive location at the corner of Ninth and Flower Streets, which is (a) across the street from the newly opened Ralphs supermarket, (b) a few blocks away from the LA Live complex and the Staples Center, (c) on an all residential corner and (d) closer than most other South Park residences to the office core of downtown Los Angeles.  The building has resident amenities that start at street level which include (a) a valet entrance area adjacent to the lobby on Ninth Street, (b) two gated entrances that lead to above ground parking providing in excess of one parking space for each one bedroom residence and two parking spaces for each two bedroom residence, and (c) an efficient loading dock area for resident move-ins.    The building's residences are located on the twenty-eight residential floors that start on floor 7 and culminate with the four penthouses on floor 35.

9.     The Project is capitalized by approximately $73 million of funds advanced by 845 Flower and an $84 million construction loan from Canyon (the "Loan") memorialized by a Loan Agreement dated July 31, 2008 (the "Loan Agreement").  On that same date, 845 Flower executed

352095.03 [XP]                                                                                                    25293

1   a promissory note (the "Note") in the original principal amount of $84,000,000 in favor of Canyon.

2   845 Flower's obligations under the Note were secured by a construction deed of trust (the "Flower

3   Deed of Trust") in favor of Canyon against the Project.  845 Flower also granted Canyon a security

4   interest in various deposit accounts of 845 Flower (the "Accounts Pledge").

5         10.     Chinatown owns approximately 5.5 acres of unimproved land at 129 West College

6   Street in downtown Los Angeles ("Chinatown Property").  The Chinatown Property has significant

7   development potential and the current development plan for the property is for a mixed residential

8   retail use.

9         11.     In connection with the Loan from Canyon to 845 Flower,  Chinatown granted

10  Canyon a deed of trust (the "Chinatown Deed of Trust") against the Chinatown Property.  Other

11  than the Chinatown Deed of Trust, the Chinatown Property is unencumbered.  The Chinatown

12  Property was appraised at $17,600,000 as of March 2008 based upon about $80 per land square

13  foot.

14        12.     MMPI is the sole general partner of, and holds a 99.6% ownership interest in,

15  MMPLP.  MMPLP owns 100% of the membership units in MMP Ventures.  MMP Ventures, in

16  turn, owns 100% of the stock or membership units in a number of subsidiary corporations and

17  limited liability companies, including 845 Flower and Chinatown, referred to as the "property-level

18  entities" because they are the entities which hold title to the various real properties and real estate

19  projects developed and operated by MMPI through MMPLP.  In connection with the Loan from

20  Canyon to 845 Flower, MMP Ventures pledged its membership interests in 845 Flower and

21  Chinatown to Canyon (the "845 Flower Pledge Agreement," the "Chinatown Pledge Agreement"

22  and, collectively, the "Pledge Agreements").

23        13.     In connection with the Loan from Canyon to 845 Flower, MMPI executed both

24  completion and repayment guaranties in favor of Canyon (the "MMPI Guaranties"). The Loan

25  Agreement, the Note, the Deed of Trust, the Accounts Pledge, the MMPI Guaranties, the

26  Chinatown Deed of Trust, the Pledge Agreements and all other documents and instruments

27  evidencing or securing the Loan, are referred to collectively herein as the "Loan Documents."

28

352095.03 [XP]

25293

14.     I am aware that Canyon filed a motion for relief from the automatic stay in the Flower case in which Canyon asserts that it is entitled to relief from the stay because the Debtor does not have any equity in the Project and according to Canyon, the Debtor cannot cram down a plan on Canyon over its objection. 845 Flower vigorously disputes each of Canyon's contentions.

15.     845 Flower proposes to sell the Project to Watermarke Properties, Inc., a California corporation (the "Buyer") for a purchase price of $110,000,000 (less certain purchase price adjustments of $500,000) (the "Flower Sale") pursuant to certain agreements between the Debtor and the Buyer, copies of which are attached as Exhibit A to my declaration in support of 845 Flower's motion to approve the Flower Sale (the "Sale Motion"). There is no broker's commission for this transaction. The sale is not subject to overbid. 845 Flower has not been contacted by any potential overbidder and, in 845 Flower's business judgment, at this time there are no viable alternative purchasers for a price in excess of the purchase price offered by the Buyer.

16.     The Buyer is a privately owned real estate investment company that acquires, develops and operates a diverse portfolio of apartments, retail, office and industrial properties. All contingencies have been waived by the Buyer and all conditions to closing have been satisfied or waived other than obtaining an order of the Bankruptcy Court approving this sale and other standard closing conditions (such as performance by the Seller at closing). The Buyer has provided a $5 million deposit in escrow which is non-refundable provided the remaining conditions to closing are satisfied. There is a $500,000 purchase price credit in consideration of 845 Flower not having to purchase or install window coverings. The Buyer is required to close the sale no later than five business days after entry of an order of the Bankruptcy Court approving the sale which is not subject to a stay of enforcement.

17.     845 Flower has requested that the Project be sold free and clear of all creditors with Liens on the Project, including Canyon and the Mechanics' Lien Creditors. 845 Flower believes the amount owing to the Mechanics' Lien Creditors in the aggregate is between $4,197,157 and $8,733,944.

18.     Subject to Court approval, the Debtors and Canyon have agreed to settle all disputes arising out of or relating to Canyon's claims against the Debtors or arising out of or related to the

1   Loan Documents, the RFS Motion, and the Chinatown Adversary Proceeding (the "Settlement").

2   The Settlement is memorialized in the written settlement agreement (the "Settlement Agreement"),

3   a true and correct copy of which is attached as Exhibit "1."   Pursuant to the settlement, Canyon has

4   agreed to accept the Settlement Amount[7] from escrow at closing in satisfaction of its Lien and has

5   agreed to the release of its Lien on the Project (the "Settlement Amount").   The Settlement Amount

6   shall be paid to Canyon out of escrow at the closing of the Flower Sale.

7       19.     In my business judgment, I believe that the Settlement is in the best interests of the

8   Debtors and their affiliated debtors-in-possession.   845 Flower and Canyon have already engaged

9   in extensive litigation related to 845 Flower's motion to sell individual condominium units and

10  Canyon's RFS Motion.   In the extensive briefing related to Canyon's RFS Motion, Canyon asserted

11  that 845 Flower could not confirm a cram down plan over Canyon's objection and indicated it

12  would object and seek to prevent confirmation of the First Amended Plan proposed by 845 Flower

13  and Chinatown.   Although 845 Flower disputes Canyon's assertions, and I believe 845 Flower

14  could confirm a plan without Canyon's support, it is undisputed that a heavily contested cram down

15  confirmation will be expensive and time consuming and 845 Flower acknowledges there is always

16  a risk of loss in any litigation.

17      20.     The Settlement also fixes the amount of Canyon's debt as of April 30, 2010 and the

18  payment of the Settlement Amount ensures that 845 Flower and its estate will no longer bear the

19  potentially heavy burden of default interest accruing on the Loan at a rate in excess of $1,000,000

20  per month.

21      21.     While I remain confident of the defenses and counterclaims of 845 Flower and

22  Chinatown in the Chinatown Adversary Proceeding, I also recognize the possible risk and the

23  unavoidable complexity, delay and expense of continuing to litigate the Chinatown Adversary

24  Proceeding, including the possibility that the disputed issues in the Chinatown Adversary

25  _____

26  [7] The Settlement Amount is $86,521,389 if paid by April 30, 2010. If the Settlement Amount is
    paid after April 30, 2010, the Debtor will also be required to pay per diem interest in the amounts
27  set forth in the Settlement Agreement until the payment date.

28

352095.03 [XP]

25293

1   Proceeding may not be subject to summary judgment and may require an expensive and time

2   consuming bench trial.  I have factored in such risk of loss in determining that, in my business

3   judgment, the Settlement is fair, reasonable, and in the best interests of the Debtors.

4        22.     The Flower Sale purchase price is sufficient to not only satisfy 845 Flower's

5   payment obligations under the Settlement but I believe the proceeds will be sufficient to  satisfy the

6   outstanding secured and unsecured claims in the Flower case.

7        23.     The Settlement also will result in the withdrawal of Canyon's $84 million claim

8   against MMPI and the release of Canyon's liens on MMP Ventures' membership interests in

9   Chinatown and 845 Flower and the release of Canyon's liens against the Chinatown Property.

10        24.     Based on the foregoing, I believe the Settlement is in the best interests of the

11   Debtors, their estates and their creditors.

12

13        I declare under penalty of perjury under the laws of the United States of America that the

14   foregoing is true and correct.

15        Executed on April 13, 2010, at Los Angeles, California.

16

17        /s/ John C. Maddux

18          JOHN C. MADDUX

19

20

21

22

23

24

25

26

27

28

352095.03 [XP]

25293

## <u>REQUEST FOR JUDICIAL NOTICE</u>

Meruelo Maddux - 845 S. Flower Street, LLC ("845 Flower"), Meruelo Chinatown, LLC ("Chinatown"), Meruelo Maddux Properties, Inc., ("MMPI") and Meruelo Maddux Properties Ventures, LLC ("MMP Ventures") (collectively, the "Debtors"), hereby request that the Court take judicial notice of the following facts:

1.      MMPI and MMP Ventures filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") on March 27, 2009.

2.      MMPI and MMP Ventures are operating their business affairs pursuant to the authority granted under §§ 1107 and 1108 of the Code.

3.      On September 3, 2009, 845 Flower and Chinatown filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code with the Bankruptcy Court.

4.      845 Flower and Chinatown have and are continuing to operate their business as debtors-in-possession under 11 U.S.C. §§ 1107 and 1108.

### <u>Pleadings Filed in the Flower Case</u>

The Debtors further request that the Court take judicial notice of the contents of the following pleadings previously filed in the Flower bankruptcy case, case number 1:09-bk-21621-KT:

5.      *Notice of Motion and Debtor Meruelo Maddux-845 So. Flower Street, LLC's Emergency Motion for an Order Authorizing the Use of Cash Collateral on an Interim and Final Basis; Memorandum of Points and Authorities in Support Thereof* filed with the Court on September 15, 2009 (*docket no. 16*);

6.      *Adversary case 1:09-ap-01435. Complaint by Canpartners Realty Holding Company IV LLC against Meruelo Maddux - 845 S. Flower Street,.LLC* filed on October 19, 2009 (Flower docket no. 70; Chinatown docket no. 42)

7.      *Order Granting Use of Cash Collateral by.Debtor Meruelo Maddux - 845 S Flower Street* entered on October 23, 2009 (*docket no. 75*);

352095.03 [XP]                                                                                                    25293

1    8.    Canyon's proof of claim filed on October 29, 2009 for "not less than $84,000,000"

2    (*Flower proof of claim no. 8*);

3    *9.*    Canyon's *Notice of motion and motion for relief from the automatic stay with*

4    *supporting declarations real property re: 705 W. 9th Street, Los Angeles* filed on November 12,

5    2009 (docket no. 86);

6    10.    845 Flower and Chinatown's *Joint First Amended Disclosure Statement and Joint*

7    *First Amended Plan of Reorganization* filed on February 17, 2010 (*Flower docket no. 188*;

8    *Chinatown docket no. 76*).

9    11.    845 Flower's *Motion for Order Authorizing The Sale of Real Property Free and*

10   *Clear of Liens* filed on April 13, 2010.

11   **<u>Pleadings Filed in the Chinatown Adversary Proceeding</u>**

12   The Debtors further request that the Court take judicial notice of the contents of the

13   following pleadings previously filed in the Chinatown Adversary Proceeding, case number 1:09-

14   ap-01435-KT:

15   12.    *Complaint by Canpartners Realty Holding Company IV LLC against Meruelo*

16   *Maddux - 845 S. Flower Street, LLC* filed on October 19, 2009 (*Chinatown Adv. Proc. Docket no.*

17   *1*);

18   13.    *Order Granting Stipulation Consolidating Adversary Proceeding Numbers 09-*

19   *01435 and 09-01437* entered on November 19, 2009 (*Chinatown Adv. Proc. Docket no. 6*);

20   *14.*    *Answer to Complaint , Counterclaim by Meruelo Chinatown, LLC, a CA limited*

21   *liability company, Meruelo Maddux - 845 S. Flower Street, LLC against Canpartners Realty*

22   *Holding Company IV LLC* filed on December 8, 2009 (*Chinatown Adv. Proc. Docket no. 8*)

23   15.    *Canyon's Notice of Motion and Motion for Summary Judgment and/or Partial*

24   *Summary Adjudication; Memorandum of Law in Support Thereof* filed on February 16, 2010

25   (*Chinatown Adv. Proc. Docket no. 13*);

26   16.    Defendants and Counterclaimants' *Notice of Motion and Debtors' Motion for*

27   *Summary Judgment in Favor of Debtors on all Claims for Relief Asserted in Plaintiff's Complaint,*

28   *and on First, Third and Fourth Claims for Relief in Debtors' Countercomplaint, or in the*

27

1   *Alternative for Summary Adjudication of Facts With Respect to Which There is no Dispute; and*

2   *Memorandum of Points and Authorities in Support thereof* filed on February 16, 2010 (Chinatown

3   Adv. Proc. Docket no. 16);

4      **Pleadings Filed in the Chinatown Case**

5      The Debtors further request that the Court take judicial notice of the contents of the

6   following pleadings previously filed in the Chinatown bankruptcy case, case number 1:09-bk-

7   21622-KT:

8      17.   *Adversary case 1:09-ap-01435. Complaint by Canpartners Realty Holding*

9   *Company IV LLC against Meruelo Maddux - 845 S. Flower Street, LLC* filed on October 19, 2009

10   (*Flower docket no.* 70; *Chinatown docket no.* 42);

11      18.   Canyon's proof of claim filed on October 29, 2009 for "not less than $84,000,000"

12   (*Chinatown proof of claim no.* 2);

13      19.   *Joint First Amended Disclosure Statement and Joint First Amended Plan of*

14   *Reorganization* filed on February 17, 2010 (*Flower docket no.* 188; *Chinatown docket no.* 76).

15   **Pleadings Filed in the MMPI Case**

16      The Debtors further request that the Court take judicial notice of the contents of the

17   following pleadings previously filed in the MMPI bankruptcy case, case number 1:09-bk-13556-

18   KT:

19      20.   Canyon's proof of claim filed against MMPI only on September 22, 2009 for $84

20   million (*MMPI proof of claim no.* 41).

21   Dated: April 13, 2010          Respectfully submitted,

22                  DANNING, GILL, DIAMOND & KOLLITZ, LLP

23

24               By:   *Julia W Brand*

25                  Julia W. Brand
                    Attorneys for Debtor and Debtor-in-

26                     Possession, Meruelo Maddux - 845 S.
                    Flower Street, LLC, Meruelo Chinatown,

27                     LLC, Meruelo Maddux Properties, Inc.
                    and Meruelo Maddux Properties Ventures,

28                     LLC

352095.03 [XP]                                     25293

# EXHIBIT 1

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (this "**Settlement Agreement**") is entered into as of this _12th_ day of April, 2010, by and between MERUELO MADDUX – 845 S. FLOWER STREET, LLC, a Delaware limited liability company ("**845 Flower**"), MERUELO CHINATOWN, LLC, a California limited liability company ("**Chinatown**"), MERUELO MADDUX PROPERTIES, INC., a Delaware corporation ("**MMPI**"), and MMP Ventures, LLC, a Delaware limited liability company ("**MMP Ventures**," and together with 845 Flower, Chinatown and MMPI, the "**Debtors**"), on the one hand, and CANPARTNERS REALTY HOLDING COMPANY IV LLC, a Delaware limited liability company ("**Canyon**," together with Debtors, the "**Parties**," and each a "**Party**"), on the other hand, with respect to the following:

## RECITALS

A.      845 Flower and Canyon are parties to that certain Loan Agreement dated as of July 31, 2008 (the "**Loan Agreement**") pursuant to which Canyon made a loan of $84,000,000 ("**Loan**") to 845 Flower for the construction of 845 Flower's condominium tower project located at 705 W. 9th Street, Los Angeles, California. 845 Flower is the maker of the Promissory Note dated July 31, 2008, in the original principal amount of $84,000,000 in favor of Canyon (the "**Note**"), which is secured by a Construction Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing and an Absolute Assignment of Leases, Rents and Income, each dated as of July 31, 2008, and recorded in the Official Records of Los Angeles County, California (collectively, the "**Deed of Trust**"), which encumber the property as defined in the Deed of Trust (the "**Property**"). 845 Flower also executed and delivered a Pledge Agreement (Accounts) dated July 31, 2008 (the "**Accounts Pledge**"), granting Canyon a security interest in various accounts of 845 Flower. Among other accounts, the Accounts Pledge includes two construction reserve accounts: Account No. 112950087 maintained at City National Bank, and Account No. 80360357 maintained at East West Bank (the "**Construction Reserve Accounts**").

B.      MMPI executed and delivered to Canyon a Completion Guaranty dated as of July 31, 2008 and a Repayment Guaranty also dated as of July 31, 2008 (the "**Guaranties**").

C.      Chinatown executed and delivered to Canyon a Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated as of July 31, 2008 (the "**Chinatown Deed of Trust**"), which encumbers the property as defined in the Chinatown Deed of Trust (the "**Chinatown Property**").

D.      MMP Ventures executed (i) an Accommodation Pledge Agreement pursuant to which it pledged its membership interest in Chinatown to Canyon (the "**Chinatown Pledge Agreement**"), and (ii) an Accommodation Pledge Agreement pursuant to which it pledged its membership interest in 845 Flower to Canyon (the "**845 Flower Pledge Agreement**").

E.      The Loan Agreement, the Note, the Deed of Trust, the Accounts Pledge, the Guaranties, the Chinatown Deed of Trust, the 845 Flower Pledge Agreement, the Chinatown Pledge Agreement and all other documents and instruments, as amended from time to time,

evidencing or securing the Loan, including all documents defined to be part of the Loan Documents in the Loan Agreement, are referred to collectively herein as the "**Loan Documents**." Any capitalized terms used and not defined herein (or whose definition is not otherwise referenced to be in another document) shall have the meanings given such terms in the Loan Documents.

F.      On March 27, 2009 (the "**MMPI Petition Date**"), MMPI and MMP Ventures filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Central District of California (the "**Bankruptcy Court**"). The case number for MMPI's case is 1:09-bk-13356-KT (the "**MMPI Case**"); and the case number for MMP Ventures' case is 1:09-bk-13392-KT (the "**MMP Ventures Case**"). The MMPI Case and the MMP Ventures Case are being jointly administered under the lead case, *In re Meruelo Maddux Properties, Inc.*, along with the cases of 52 other related entities. Since the filing of their petitions for relief, these 54 debtors have operated, and are continuing to operate, their business as debtors-in-possession under 11 U.S.C. §§ 1107 and 1108.

G.      On September 3, 2009, (the "**Petition Date**"), 845 Flower and Chinatown filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court. The case number for 845 Flower's case is 1:09-bk-21621-KT (the "**Flower Case**"); and the case number for Chinatown's case is 1:09-bk-21622-KT (the "**Chinatown Case**"). Since the filing of their petitions for relief, these two debtors have operated, and are continuing to operate, their business as debtors-in-possession under 11 U.S.C. §§ 1107 and 1108. The Flower Case, Chinatown Case, MMPI Case and MMP Ventures Case are collectively referred to as the "**Chapter 11 Cases**."

H.      On November 12, 2009, Canyon filed its Motion for Relief from the Automatic Stay (the "**RFS Motion**") in the Flower Case. The Debtors dispute that Canyon is entitled to relief from the automatic stay.

I.      On October 19, 2009, Canyon filed an adversary proceeding in the Flower Case and the Chinatown Case, asserting and seeking a declaration, among other things, that Canyon was not required to release its lien on the Chinatown Property or its security interest in MMP Ventures' membership interests in Chinatown. The Debtors contend in such adversary proceeding, among other things, that Canyon is required to release its liens on the Chinatown Property and release its security interest in MMP Ventures' membership interests in Chinatown. The adversary proceedings were consolidated and are pending under Adversary Case No.1:09-ap-01435-KT (the "**Chinatown Adversary Proceeding**"). Each party to the Chinatown Adversary Proceeding has filed a motion for summary judgment and disputes that the other party is entitled to judgment in its favor.

J.      On February 17, 2009, 845 Flower and Chinatown filed their First Amended Joint Plan of Reorganization and Joint Disclosure Statement (the "**First Amended Plan**").

K.      Canyon drew $713,593 from the Debtor's Interest Reserve Account, City National Bank Account Number 112950060 on April 8, 2010, and applied such funds to accrued interest.

L.      The Parties desire to memorialize their settlement of all disputes arising out of or relating to the Loan Documents, the RFS Motion, the Chinatown Adversary Proceeding and the treatment of all of Canyon's claims in the Chapter 11 Cases, in accordance with the terms and conditions set forth in this Settlement Agreement.

## TERMS AND CONDITIONS

Based on the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      Recitals Incorporated. The foregoing recitals are true and correct to the best of the Parties' knowledge and are incorporated herein by reference.

2.      Bankruptcy Court Approval and Confidentiality of Settlement. The Parties agree that this Settlement Agreement is subject to, and conditioned upon, entry of an order by the Bankruptcy Court approving the terms of this Settlement Agreement (the "**Approval Order**") in each of the Debtors' respective Chapter 11 Cases. 845 Flower shall file in the Flower Case, Chinatown shall file in the Chinatown Case, and MMPI and MMP Ventures shall file in the MMPI and MMP Ventures Cases, and Canyon will support, a motion to approve this Settlement Agreement (the "**Settlement Motion**"). The Settlement Motion shall be set for hearing at such time as requested by the Debtors, but not later than May 7, 2010. Canyon shall support a request to hear the Settlement Motion on shortened notice. Canyon shall keep confidential and not disclose to any third party (other than its attorneys and investors as necessary to implement the terms of this settlement) the existence and terms of this Settlement Agreement and the Settlement Motion, until the Settlement Motion is filed with the Bankruptcy Court.

3.      Outstanding Debt. By execution of this Settlement Agreement, Debtors admit that Canyon's debt under the Loan Documents is equal to $94,912,344 as of April 30, 2010 (the "**Total Debt Amount**"), inclusive of all principal, contract interest, default interest, late fees, attorneys' fees and costs or other charges and amounts due or that may come due under the Loan Documents. Debtors further admit that there are no defenses, offsets, recoupments, claims, counterclaims, or other challenges that would reduce the obligation of 845 Flower to repay the Total Debt Amount to Canyon, except as provided in this Settlement Agreement. Subject to the terms of this Settlement Agreement, Debtors further waive any right to challenge, cure, reinstate, unwind, avoid, or in any way limit 845 Flower's liability to repay any component of the Total Debt Amount that reflects contract interest, default interest, late fees, penalties, attorney's fees and costs or other charges.

4.      Payments to Outstanding Creditors. No payment to Debtors' attorneys, appraisers, accountants, bankruptcy consultants and similar professionals (the "**Debtors' Professional Creditors**") will be made from any funds and accounts pledged to Canyon (including the Remaining Claims Fund defined below) until Canyon is paid in full in accordance with **Section 7** and the Remaining Claims Fund (as hereinafter defined) is funded, both in accordance with this Settlement Agreement; provided, however, if the Remaining Claims Fund has been funded in accordance with clause (c) below, Debtor's Professional Creditors may be

paid from funds other than the Remaining Claims Fund. Debtors will negotiate settlements or obtain resolutions (through mutual settlement, a reorganization plan and/or adversary proceedings or otherwise) of claims by all of 845 Flower's creditors other than Debtors' Professional Creditors (the "**Outstanding Creditors**") (both pre- and post-petition, and both secured and unsecured) which will fully and finally resolve their respective claims.  845 Flower (with the reasonable cooperation of Canyon) shall use commercially reasonable and diligent efforts to negotiate and settle the claims of Outstanding Creditors that have not previously executed a settlement agreement as to all of their claims prior to closing of the 363 Sale (defined in **Section 7** below).  Debtors and Canyon will cooperate to (i) execute all documents necessary to effectuate a settlement with each of the Outstanding Creditors; (ii) authorize payments to the Outstanding Creditors out of funds in the Construction Reserve Accounts or Remaining Claims Fund (as hereinafter defined), as applicable; and (iii) obtain appropriate releases of liens and claims and withdrawal of proofs of claims from each of the Outstanding Creditors, satisfactory to Canyon, in its sole and absolute discretion (the "**Outstanding Creditors' Approved Releases**"). If any claims of Outstanding Creditors (other than Debtors' Professional Creditors) are not settled and paid at or prior to the closing of the 363 Sale ("**Remaining Claims**"), then 845 Flower shall (a) establish and maintain a debtor-in-possession account at City National Bank, N.A. ("**CNB**") (the "**Remaining Claims Fund**"); (b) grant to Canyon a security interest in the Remaining Claims Fund pursuant to a pledge agreement substantially in the form of the Accounts Pledge and an account control agreement substantially in the form of the existing Account Control Agreement among CNB, 845 Flower and Canyon; and (c) deposit into the Remaining Claims Fund, an amount equal to the sum of One Million Five Hundred Thousand Dollars ($1,500,000.00) plus one hundred percent (100%) of the maximum amount claimed under the Remaining Claims until the Remaining Claims are settled and/or otherwise resolved (through mutual settlement, a reorganization plan and/or adversary proceedings or otherwise) in a manner satisfactory to Canyon, in its reasonable discretion, all Outstanding Creditors' Approved Releases have been obtained and any third party (non-internal Canyon personnel) fees and costs incurred by Canyon from and after April 30, 2010, arising out of the Remaining Claims (as are more fully described in the following sentence) are paid.  Debtors acknowledge and agree that Canyon shall have the absolute right to draw upon the proceeds of the Remaining Claims Fund for third party (non-internal Canyon personnel) fees and costs incurred by Canyon from and after April 30, 2010, arising out of the Remaining Claims including, but not limited to, attorneys' fees and costs, court costs (including appellate level), filing fees, defense costs and the like.  Canyon will concurrently deliver to 845 Flower copies of any draw requests together with supporting documentation; provided, however, if such third party (non-internal Canyon personnel) fees and costs exceed $100,000 in the aggregate, Canyon will obtain the reasonable consent of 845 Flower to any such expenses prior to drawing on the proceeds of the Remaining Claims Fund. The Debtors hereby indemnify, defend and hold Canyon free and harmless from and against any and all liabilities, costs, obligations, expenses or claims in any manner arising out of the Remaining Claims and any such indemnification claim shall be treated as an Administrative Claim in the Flower Case.

       5.    <u>First Amended Plan and First Amended Disclosure Statement</u>. The Debtors shall not proceed with the hearing on approval of the First Amended Disclosure Statement and the First Amended Plan, nor shall Debtors seek confirmation of the First Amended Plan, as presently propounded.  The Debtors shall have the right to modify the First Amended Plan or file a further amended plan and proceed to confirmation of such plan; provided